ARKADELPHIA LUMBER COMPANY *v.* ASMAN.

Opinion delivered December 9, 1907.

1. CORPORATION—POWER OF PRESIDENT TO EMPLOY OFFICIALS.—Power to employ a general manager by the year is conferred on the president of a corporation by a by-law which provides that "the president shall be the chief executive officer of the company," and that "it shall be his duty to direct and control the affairs of the company and to exercise · the same supervising power over all departments that is usually exercised by the presiding officer of incorporated associations," and that · "all instructions emanating from him shall be taken by subordinates as having received the sanction of the directory;" and this is true although another by-law provides that all officers and agents except president, vice-president, secretary and treasurer "shall hold their position at the pleasure of the directory." (Page 576.)

2. SAME—POWER OF PRESIDENT TO DISCHARGE MEN.—If an employee of a corporation held his position at the pleasure of the board of directors, his discharge by the president was wrongful, in the absence of authority from or ratification by the board. (Page 576.)

3. APPEAL—HARMLESS ERROR.—Appellant may not complain of a harmless error. (Page 576.)

4. CUSTOMS AND USAGES—EVIDENCE.—Where plaintiff was hired as general sales manager of a corporation, without express contract as to the period of employment, and brought suit upon a contract of employment by the year, evidence that his predecessor had been employed by the year and had worked for appellant for seven years was competent to show a custom of hiring by the year. (Page 576.)

5. SAME—PROOF OF PARTICULAR CUSTOM.—In a suit in which plaintiff sought to recover salary as sales manager of a corporation under an employment by the year, testimony that the president of the corporation told plaintiff that he was to succeed one P., and that both P. and the vice-president of the corporation told plaintiff, before he accepted the employment, that it was by the year, and that P. had been employed by the year, was sufficient evidence to go to the jury to prove a particular custom of defendant to employ its sales managers by the year. (Page 577.)

6. TRIAL—ABSTRACT INSTRUCTIONS.—An instruction is not abstract if there be any evidence from which the jury might infer the existence of the fact supposed. (Page 577.)

7. CUSTOMS AND USAGES—PLEADING PARTICULAR CUSTOM.—A particular custom relied upon to establish a cause of action may be proved without pleading it. (Page 577.)

8. EVIDENCE—DISCRETION OF COURT IN ADMITTING.—While a question asked a witness by appellant elicited an answer that contained both competent and incompetent matter, and appellant asked the court to

exclude the incompetent matter, it was within the court's discretion either to permit appellant to withdraw both the question and answer or to refuse to exclude the objectionable matter. (Page 578.)

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellee sued appellant for personal services under a verbal contract of employment, alleged to have been for the term of one year. He was discharged, and brought this suit for $400 for two months' services.

Appellant answered: Paragraph 1 admitted the employment, but alleged that it was for no definite time. Paragraph 2 alleged that appellee was at the time of making said contract a stockholder and a member of the board of directors of the appellant, and as such was bound by its bylaws. That the following by-laws of appellant were in force at the time, to-wit:

"Sec. 1, article 5. The directors shall elect from their number a president and vice president, and from the stockholders a secretary and treasurer. They shall also elect a general manager, and may select such attorneys, clerks, book-keepers and agents as may be deemed necessary. * * The president, vice president, secretary, and treasurer shall hold their offices for one year, and until their successors are elected and qualified, provided, they may be impeached by the board of directors for corruption, incapacity, or neglect of duty. All other officers, attorneys, or agents shall hold their positions at the pleasure of the directory."

Section 2, article 5. "The president shall be the chief executive officer of the company. It shall be his duty to direct and control the affairs of the company, and to exercise the same supervising power over all departments that is usually exercised by the presiding officer of incorporated associations. All instructions emanating from him shall be taken by subordinates as having received the sanction of the directory."

The plaintiff adduced testimony tending to show that the St. Louis Refrigerator & Wooden Gutter Company, a Missouri corporation, owns a majority of the stock in the Arkadelphia

Lumber Company, appellant, an Arkansas corporation, and appellant owns the Ultima Thule, Arkadelphia & Mississippi Railroad, hereafter called the railroad. Mr. Werner, who was an officer and a large stockholder in all three of the above-named companies, sold, in the latter part of 1896, his stock in said companies. When it became known that Mr. Werner had sold his stock, Mr. F. R. Pierce, who was sales manager of appellant and general freight agent of the railroad, decided to resign said position with appellant, and go with Mr. Werner. When this was known, Mr. Wm. Grayson, an officer and large stockholder in all three of the said companies, and had been for more than ten years, sent for appellee, and told him that he (appellee) was to go to Arkadelphia to succeed Mr. Pierce. The appellee, at this time was in the employ of the St. Louis Refrigerator & Wooden Gutter Company in the sales department, in whose employ he had been for the past ten years, and his employment was by the year. Mr. Pierce, who was the sales manager of appellant and general freight agent of the railroad, was also employed by the year. For something like ten years appellee had been in the employ of the St. Louis Refrigerator & Wooden Gutter Company in the sales department, and for about the same time Mr. Pierce was sales manager of appellant and general freight agent of the railroad, and during this time they were both employed by Mr. Werner, who was a stockholder and officer in said companies and employed the men in the sales department of said companies. When Mr. Werner sold his stock, and Mr. Pierce resigned as sales manager of appellant, appellee went to Arkadelphia, and succeeded Mr. Pierce. The affairs of the three companies were so connected that appellee was familiar with all the duties that Mr. Pierce performed, and knew from both Mr. Pierce and Mr. Werner that Mr. Pierce was employed by the year. The day after appellee went to Arkadelphia to succeed Mr. Pierce, he was transferred some stock in appellant, which he immediately transferred back, and, although not a stockholder, he was elected vice president of appellee for the purpose of "giving him prestige with the trade." And about the same time he was appointed general freight agent of the railroad, which appointment is for a year. As sales manager, it was necessary for him to make freight rates. in order for him to sell the output of the mill.

H. R. Pierce testified: That Mr. Werner was vice president of appellant company at the time he was employed by appellant and continued in that capacity throughout the period of his employment. That, he, Pierce, was hired by the year. That he was salesman from the office of the Wooden Gutter Company immediately prior to the time he was employed by appellant. That it had been the custom of appellant to employ persons by the year to fill positions such as he and appellee filled.

Wm. Grayson, for defendant, testified: "I am president of the Arkadelphia Lumber Company. Mr. Asman's connection with it came about in this way: I told Mr. Asman that I would give him Mr. Pierce's place, at $200 per month. This was about December 20, 1896. That I would put some stock in his name, so that he could be elected director and vice president. The object of that was that he had to travel a great deal in selling lumber, and to be an officer of the company would give him prestige with the trade. The stock was put in his name December 21, 1906." Q. "How much stock?" A. "100 shares, which he signed back, leaving him still a stockholder on the books and entitled to be elected vice president. Our annual meeting takes place on the first Monday in February. Asman was present, and was elected a director, and by the directors, vice president. He was paid nothing for being either vice president or director. He was paid to sell the product of the Arkadelphia Lumber Company's mill." Q. "Are any of the officers, the president, secretary or vice president, paid any salary?" A. "No, sir; nobody is paid without he performs some actual duties all the time." Q. "What occurred at your residence, when Mr. Asman was there, at the time he mentions?" A. "I sent for Mr. Asman. I talked with him previous to going to my house and agreeing upon the salary. Nothing was said about the salary at that time as he says." Q. "Was there any mutual understanding between you and him that his employment should be by the year?" A. "No, sir. I only agreed to pay him so much per month." Q. "Have any of the employees of the Arkadelphia Lumber Company, since you have been connected with it, been employed by the year?" A. "Not one. I will qualify that; I do not employ all the employees at the mill,

the foreman or engineer or anything like that. That is left to the manager." Q. "Do you know of your personal knowledge of anybody being employed by the year?" A. "No, sir, I do not." Q. "Was Mr. Pierce employed there by the year?" A. "I do not think so. I did not employ 'him." Q. "There was no custom at that time that you know of?" A. "No, sir." Q. "You were a member of the board of directors for the last fifteen years?" A. "Yes, sir."

The court instructed the jury as follows:

"1.  You are instructed that the president of the Arkadelphia Lumber Company, Wm. Grayson, did have the authority to employ the plaintiff for a year, and, if he did so, it would be binding on defendant.

"2.  The court instructs the jury, as a matter of law, that when a contract is entered into the parties are supposed to have reference to the known customs which enter into and govern the business or subject-matter to which the contract relates, if there are such customs, unless such presumption is rebutted by the agreement.

"2½.  The plaintiff here contends that he was employed to work for the Arkadelphia Lumber Company for $2,400 per annum, commencing sometime in February, 1898, and in November, prior to the next February, he was discharged, and was unable to get work until January—losing two months— for which he sues. If the contention is true, and he was discharged without cause, he is entitled to recover the amount due him from that contract for whatever time he lost by reason of the discharge.

"5.  If a man has been employed under a verbal contract for one year, and at the expiration of that year he enters upon another term, with a tacit understanding, without being expressed, that he was to continue his business under the same contract, then the company will be responsible to him for another year's contract; that is upon the theory that it is clearly understood by all parties that he was to serve a year at the same rate. If you believe upon the expiration of the first contract for twelve months, if you believe there was one for twelve months, he then entered upon another term without any more specifications about it, but under the same circumstances with-

out more specifications, if it was understood between the parties that he was to work for twelve months, and you believe that from the facts, it is your duty to so find, and find for the plaintiff the sum sued for.

"6.  You are instructed that a contract may be proved, not only by actual agreement, by direct evidence, by the express words used by the parties, but also by circumstantial evidence. So in this case if you find, either by actual agreement, by direct evidence, by express words used by the parties, or by circumstantial evidence, that the plaintiff's employment was by the year, then your verdict should be for the plaintiff."

There was a jury trial and verdict for appellee.  Appellant filed its motion for a new trial, and upon same being overruled has appealed.

*John H. Crawford,* for appellant.

1.  It was error to permit appellee to introduce testimony to show a custom or usage of appellant to employ its sales manager by the year.  The circumstance that he was elected as vice president, general freight agent, etc., in no wise tended to make his position as sales manager yearly in duration and co-extensive in term with his office as vice president, etc.  188 Mass. 254.

2.  There being no sufficient evidence to establish a known custom or usage as to the employment of a sales manager, the court's second instruction was improper.  17 Ark. 428; 58 Ark. 125.  To be binding, a custom or usage must have been so long adhered to, and so generally known, as to raise a presumption that it was understood as forming a part of any transaction had with reference to its subject-matter.  1 Blackstone, *57.  In this case a particular custom was relied on, but not pleaded.  *Id.* *67; 53 Kan. 217; 5 Grat. 24; 76 Ia. 629; 28 S. W. 106; 13 Tex. Civ. App. 475; 71 Tex. 99; 144 U. S. 476; Lawson, Usages and Customs, § § 17, 18, 19; 74 Mo. 167; 36 Mich. 131; 16 Mont. 474; 81 Ark. 549.

3.  Appellee was bound by the by-laws of the company, he being a stockholder and a director therein.  Under the by-laws, only the president, vice president, secretary and treasurer hold office yearly; all others at the pleasure of the directory.  And he is estopped in this, a collateral, proceeding, to deny that he

was a *bona fide* stockholder and director. 3 Ill. 'App. 83; 51 Mo. 464; 6 Hun, 164; 25 Pa. St. 156; 42 Conn. 650; 1 N. D. 434; 33 Atl. 954; 16 Nev. 242. By-laws of a corporation are binding upon its officers, even though such officers are not members of the corporation. Boisot on By-Laws, § § 75, 86-89; 4 Neb. 435; 61 Am. Dec. 671. See also 74 Cal. 571; 43 L. R. A. 390; 162 N. Y. 435; 82 Va. 913; 94 U. S. 523; 162 Mass. 148; Boone on Corp. § 59; 80 Va. 683..

*McMillan & McMillan,* for appellee.

1. The acts of the parties to the contract are the best guide to its interpretation. 55 Ark. 414; 78 Ark. 206.

2. The proof was sufficient to show the establishment of the custom. Though time is an essential ingredient to show that a custom has been established, yet what length of time is sufficient in any particular case depends upon circumstances affecting that case. 12 Cyc. 1034 *et seq.;* 99 S. W. 849; 20 Ark. 251; 13 Wall. 363. Custom and usage are always admissible to show the length of hiring. 12 Cyc. 1070; 50 Am. Dec. 105, note. Appellant's objection to the testimony being as to the custom being general, it will not be permitted here to raise the specific objection that the custom was not pleaded. 69 Ark. 313; 60 Ark. 87; *Id.* 333, 342.

3. The stockbook introduced in evidence by appellant to show that appellee was a stockholder in the company and a member of its board of directors, is at best only *prima facie* evidence. There must have been a contract, expressed or implied; as also an intention to become a stockholder. Cook on Stockholders, § 73; 60 Am. St. Rep. 480; 1 *Id.* 776; 84 *Id.* 191, 172; 79 Fed. 906. There is no evidence of any certificate of transfer to appellee of any stock, as required by law. Kirby's Digest, § 849. Since, under the proof, appellee was not a stockholder, he could not be a director. Kirby's Digest, § 841.

4. It is shown that Werner had permission to employ by the year. If it was a violation of the by-laws, it had been habitually violated and acquiesced in for seven years. The relation between appellant and appellee being that of master and servant, the rules and laws governing master and servant control in this case. 48 Ark. 384; 77 Ark. 411; 7 Am. Dec. 272.

*John H. Crawford* and *T. D. Crawford,* for appellant on re-hearing.

1. It does not appear that the court considered the question whether the evidence introduced to prove the custom was competent. The appellant relies, not upon the point that there was no evidence to prove the custom, but upon the point that the evidence offered was incompetent and insufficient for that purpose. The testimony of the two witnesses failed to prove a general custom followed by the saw mills of the country, or that they were in a position to know the general usage of saw mills. 12 Cyc. 1040; 8 Bosw. 415, 441; 80 Ala. 51; 5 Allen, 47; 7 Gray, 16; 23 Pick. 71; 1 Allen, 106; 81 Ind. 300; 9 Gill & J. 31, 50; 33 Minn. 98; 13 Pa. St. 37; 2 Bin. 72; 3 Brewst. 452, 457; 25 Tex. Civ. App. 468; 14 S. W. (Tenn.) 928; 22 Wend. 223; 19 How. 317; 1 Car. & P. 59; Lawson on Customs, 5; 15 How. 539; 35 Ala. 209; 2 Edw. Ch. 656; 6 C. & P. 313; 5 Dana, 503; Clark's Browne on Usages, § 79; 87 Mo. 637; 17 Ark. 428; 58 Ark. 125. Evidence of a particular custom can not be engrafted upon a contract unless it is shown that both parties had the custom in mind when the contract was entered into. Lawson on Customs, 54; *Id.* 58 § 28; 9 Pick. 197.

2. The sixth instruction given by the court is erroneous, the gist of it being that the jury might in this case imply a contract from the circumstances, whereas there were no circumstances in evidence to justify that question being submitted to the jury. (1) Appellant and the St. Louis Company were different companies. The fact that the latter company employed appellee by the year does not tend to show that appellant did so. 69 Ark. 85. (2) If appellee knew, when he was employed to succeed Pierce, that the latter had been employed by the year, that fact had no tendency to prove the terms of appellee's employment. 131 N. C. 111. (3) The terms of appellee's employment by the railroad company does not tend to show what the contract was between him and appellant. 70 Ark. 10; 69 Ark. 85. (4) Neither does the fact that he held an annual pass over the Missouri Pacific Railway, even if procured for him by appellant, tend to prove the terms of his employment by appellant. (5) Nor does the fact that

his name was printed on the stationery of appellant company have such tendency.

*McMillan & McMillan,* for appellee.

Appellant in its original brief on this appeal says: "A particular custom was relied upon and should be pleaded." The testimony of Pierce and appellant was that it was the custom of appellant to employ its salesman by the year. This was to show the particular usage of appellant. Whether the testimony in this case was sufficient to establish a usage, and whether in making the contract the parties acted with reference to the usage, is a question for the jury upon proper instructions. 39 Am. Dec. 611; 67 N. W. 276; 12 Cyc. 1102. The testimony of one witness who has adequate means of knowledge may be sufficient to prove the existence of a usage. 13 Wall. 363; 12 Cyc. 1101.

HART, J., (after stating the facts.) Appellant contends that the first instruction given at the request of appellee is erroneous because the president of appellant company did not have authority to employ appellee for a year.

The section of the by-laws referred to is section one, article five, and is set out in the statement of facts. We think a fair interpretation of the by-laws referred to give the president that power, and that the instruction is correct. This is the construction that has been placed upon it by the company; for it is conceded that Pierce was hired by the year, by direction of the president; and that he had worked for the company for seven years, by employment from year to year. The president of the company says that he had the authority to hire appellee for a year, but claims that he did not do so.

Appellant now contends that the by-laws mean that appellee held his position at the pleasure of the board of directors. It is not claimed that the board authorized or ratified the action of the president in discharging appellee. Conceding appellant's construction of the by-laws to be correct, appellee was wrongfully discharged, and there was no prejudice to appellant in the instruction. Appellant can not complain of an error that was not prejudicial to it. *Kelly* v. *Keith,* 77 Ark. 31.

Appellant asks for a reversal because of the admission of F. R. Pierce's testimony. Pierce was the person to whose posi-

tion appellee succeeded. His testimony was to the effect that he had been employed by the year, and had worked for appellant for seven years. His testimony was admitted as tending to show the custom of the company in the employment of persons to fill that position. There being no express contract of hiring for a definite period of time, his testimony was competent for that purpose.

Counsel for appellant contends that there was error in giving the second instruction. He claims that there was not sufficient testimony to go to the jury to prove a custom or usage as to the employment of a sales manager. The testimony on this point is meager, but there was evidence tending to show the existence of the custom.

The appellee testified that Mr. Grayson told him that he was employed to succeed Pierce. Both Pierce and Werner, vice president of the appellant company, told him before he accepted the employment that it was by the year. Pierce testified that he had been employed by Mr. Werner, and that he was employed by the year, and that he had worked for appellant seven years. Grayson admitted that Werner had the authority to fill the position by the year, and stated that he did not know whether or not Werner had employed Pierce by the year. This evidence does not go to the extent of proving a general custom, but is sufficient to establish a particular custom. All that is contended for in this case is that the evidence establishes the custom of appellant to hire by the year employees to fill the position occupied by appellee, and the testimony is sufficient for that purpose. We think this was sufficient testimony to warrant the court in giving the instruction:

"An instruction is not abstract if there be any evidence from which the jury might infer the existence of the fact supposed; and in such case this court will not decide whether the evidence is sufficient to warrant the jury in so finding." *Mc-Neil v. Arnold, 22 Ark. 477.*

Appellant also contends that this instruction was erroneous because the custom was not pleaded. The foundation of the suit was an express contract of employment of appellee by appellant. Appellee contends that he was hired by the year, and in support of his contention, among other things, adduced tes-

timony tending to show that it was the custom or usage of appellant to employ persons to fill positions such as he filled for the period of one year. This, being a part of the evidence in the case, was not necessary to be pleaded. *McCarthy* v. *McArthur*, 69 Ark. 313.

Appellant objects that the court allowed appellee to make an answer not responsive to a question asked him on cross-examination. The question was, "Did that mutual understanding (referring to appellee's duties) grow out of that conversation that you had there at Mr. Grayson's residence—that you were to come here and succeed Mr. Pierce?" Witness answered: "That and my employment with the Wooden Gutter Company and the term under which I was employed by them, with which I supposed Mr. Grayson was fully familiar." That part of his answer with reference to his employment with the Wooden Gutter Company was asked to be excluded. The court held that it was a part of the explanation of what occurred, but offered to permit the withdrawal of both the question and answer. Appellant declined to withdraw the question, and did not ask to put it in a different form, so as to eliminate that part of the answer he deemed objectionable. There must be some discretion in a trial court in matters of this kind, and we can not say that the court abused its discretion in holding that the answer did not go beyond the scope of the question.

There are various other errors assigned by the appellant, but they all go to the sufficiency of the evidence,

It is not claimed that there was an express contract of hiring for a definite period, but it is claimed that all the facts and circumstances detailed before the jury in regard to the subject-matter of the controversy tend to show that the hiring was by the year, and not at the pleasure of the board of directors of appellant company. This was fairly presented to the jury in the sixth instruction given by the court; and whatever may be our opinion as to the weight of the evidence, we think there was testimony to support the verdict of the jury, and, under the repeated decisions of this court, it will not be disturbed.

Affirmed.

Wood, J., dissents.