ARMSTRONG v. LLOYD.

5-1746                                    321 S. W. 2d 380

Opinion delivered March 9, 1959.

*Bernard Whetstone* and *Joe B. Hurley,* for appellant.

*Melvin E. Mayfield* and *Surrey E. Gilliam,* for appellee.

JIM JOHNSON, Associate Justice. This is an appeal by the plaintiffs below from an order sustaining a demurrer to their complaint insofar as the allegations and prayer for double damages were concerned.

The action was for damages for the negligent burning of the plaintiffs' dwelling, contents, shrubs, and surrounding trees.

There was a complaint filed praying for double damages to which there was a demurrer to the double damage part, which was sustained, and, plaintiffs electing to stand on the complaint, the cause was, as to double damages, dismissed with prejudice.

Plaintiffs appealed that Order praying a ruling of this Court on the double damage feature of the case in advance of the trial of the single damage feature.

The appellants urge only one ground for reversal; that the allegations of the complaint clearly bring ap-

pellants within the provisions of the Act providing for double damages.

The substance of the complaint is set out in the following 11 paragraphs:

(1)  Plaintiffs are the owners of the North 80 feet of Northeast of the Southeast of the Southeast in 10-18-15, Union County, as well as a great deal of additional land adjacent thereto (however, the above described tract is all that is pertinent to the present litigation).

(2)  Most all of the land surrounding the above described property for some distance in all directions is forest timbered land and is located immediately west of Highway 167 approximately a mile and one-half south of El Dorado on the Junction City Highway.

(3)  Plaintiffs E. A. Armstrong and Marie Armstrong, and defendants W. M. Lloyd, W. M. Lloyd, Jr., and Mrs. W. M. Lloyd Jr., were, up to the incident about to be described in this present complaint, next door neighbors residing in their respective houses which were situated on the edge but within the above described forest timbered land, all residences facing east with the W. M. Lloyd, Jr., home being in the middle and the Armstrong home being on the north.

(4)  On March 22, 1958, at approximately 11:00 a. m., the defendants had one of their employees, Rosie Mae Jackson, burning trash in the yard in the rear between the two dwellings owned by the two Lloyds and adjacent to the Armstrong residence.  There was a high wind from the south at the time, the grass was dry between the houses, and Rosie Mae Jackson built this trash fire, left it unattended, and went back into the home of the defendants.  The fire moved northward across the grass to the dwelling of the plaintiffs Armstrong, the Armstrongs being away from home at the time, which fact was known to the defendants, and the home of the plaintiffs Armstrong caught fire and was completely destroyed, along with all of its contents.

(5)  Any fire anywhere about the premises of either of the dwellings was a hazard to the forest and tim-

ber lands surrounding these dwellings, as well as to any or all of the dwellings located therein.

(6) This was particularly true on account of the dry grass, weeds, and underbrush, which are natural in such an environment.

(7) The fire, which was set by defendant's agent, Rosie Mae Jackson, spread out and became a general grass and forest fire to the extent of one hundred yards or more in both directions behind the houses of the parties.

(8) All of this was completely obvious to the defendants and their employees in and about their homes and yards.

(9) The defendants, through their employee, Rosie Mae Jackson, who was acting within the scope of said employment, were negligent in the following, all of which combined to be the sole proximate cause of the destruction of fire on that occasion of the Armstrong home and its contents and the damage to the trees and shrubbery of the plaintiffs:

"(a) Setting on fire or causing or procuring to be set on fire, forest, brush or other inflammable vegetation on lands not their own.

"(b) Allowing fire to escape from the control of the person building or having charge of the fire, and more particularly, to the land and buildings of these plaintiffs.

"(c) Burning brush, rubbish, grass, stubble and debris without taking necessary precaution both before lighting the fire and at all times thereafter to prevent the escape thereof.

"(d) Building a fire upon lands, not their own, without clearing the ground immediately around it free from material which would carry fire, and leaving thereon a fire to spread thereon, and by throwing a lighted match, or in some other manner starting a fire in forest material not his own and leaving same unextinguished.

"(e)  By creating a public nuisance by starting a fire on forested and grasslands and allowing it to burn uncontrolled and thereby creating a menace to life and property, and particularly to the property of these plaintiffs.

"(f)  By starting or being responsible for a fire that occasioned damage to these plaintiffs.

"(g)  In burning trash at that time and place under any circumstances on account of the high wind and the dry grass.

"(h)  In allowing high grass, weeds, leaves, and trash to be placed upon and to remain and exist at, upon and adjacent to the Armstrong home, and particularly when there was a trash burner joining said existing grass, weeds, etc."

(10)  As a result of the negligence of the defendants, plaintiffs suffered the complete loss of their home and its contents.  In addition, the flowers and shrubs, which were extensive, were either destroyed by the fire or so damaged as to make them of no further value whatever, and several shade trees in their yard were damaged.  The damage thus suffered by plaintiffs is $15,000.00.

(11)  Plaintiffs pray that judgment be rendered against the defendants in the amount of $30,000.00 (double, as provided for by Section 41-510), together with their costs and all other proper relief.

The pertinent parts of Section 41-507, Ark. Stats. (which was Act 85 of the Fiftieth General Assembly of 1935 and titled "An Act to Protect the Forest of the State," the Act under which this action was brought) are as follows:

"The following acts shall be misdemeanors  . . .

"Setting on fire or causing or procuring to be set on fire any forest, brush or other inflammable vegetation on lands not his own.

"Allowing fire to escape from the control of the person building or having charge of the fire, or to spread to the lands of any person other than the builder of the fire.

"Burning any brush, stumps, logs, rubbish, fallen timber, grass, stubble or debris of any sort, whether on his own land or that of another without taking necessary precaution both before lighting the fire and at all times thereafter to prevent the escape thereof. The escape of such fire to adjoining timber, brush, or grass lands shall be *prima facie* evidence that necessary precautions were not taken.

"Building a camp fire upon lands, not one's own, without clearing the ground immediately around it free from material which will carry fire, or leaving thereon a camp fire to spread thereon or by throwing away a lighted cigar, match, cigarette, or by the use of firearms or in any other manner starting a fire in forest material not his own and leaving the same unextinguished.

"Any fire on any forested, cutover, brush lands or grasslands burning uncontrolled is hereby declared a public nuisance by reason of its menace of life or property. Any person, firm or corporation responsible for either the starting or the existence of such fire is hereby required to control or extinguish it immediately and if said person, firm or corporation shall refuse, neglect or fail to do so, any organized fire suppression force may summarily abate the nuisance thus constituted by controlling or extinguishing the fire and the cost thereof may be recovered from said responsible person, firm or corporation by civil action."

On oral argument, both sides conceded that Act 85 was not adopted from any other jurisdiction. In the absence of precedent directly in point on the question raised here, we must look to the reasoning set out in the two prior cases wherein this Court had occasion to construe this Act.

In the first case, *Missouri Pacific Railroad Company* v. *Lester,* 219 Ark. 413, 242 S. W. 2d 714, this Court

said: "Not only the title of the Act but the entire wording, in our opinion, shows that it was intended to deal with damages to *property* and not personal injuries."

The only other case construing this Act is *Lamb* v. *Hibbard*, 228 Ark. 270, 306 S. W. 2d 859, which was handed down in the fall of 1957. The facts in that case were that the Appellee had a blowout on the highway; his tire caught fire causing his gasoline truck to explode, throwing burning gasoline upon appellant's land next to the highway. The fire, fanned by a strong wind, burned across a pasture, and killed some trees and destroyed a barn containing furniture and farm equipment.

Apparently no contention was made that the double damage statute *did not* apply.

This Court said: "Taking the statute as a whole, we find no reason to think that the legislature meant to create a new basis for liability without fault or to permit the recovery of double damages for conduct falling outside the scope of the criminal provisions of the act."

Following the reasoning of the Court in this case, we must conclude that any conduct falling *within* the scope of the criminal provisions of the Act, permits recovery of double damages.

The decisive question then is: Taking the complaint in its entirety, has appellant stated a cause of action which comes within the purview of the statute above quoted? We do not think the answer to this question is clear. The reason is that the statute deals primarily with protection of the forests of the state and not primarily with doubling the damages recoverable for negligence. The title of the said act, heretofore set out, specifically so states. There are also other indications that the Act deals primarily with the protection of forests. (1) Section 9 of Act 85 of 1935 repeals Sections 2427, 2428, 2429, and 2431 of Crawford and Moses' Digest. Reference to these sections discloses that they deal with "woods" and "marshes." (2) The sections just referred to were taken from an act passed in 1875, approved February 3, 1875 (shown at pages 128 and

129 of Acts of 1874-6). The title of this act reads: "An Act to prevent the firing of woods, marshes, and prairies."

From the foregoing it appears too clear for argument that not every case involving the negligent burning of a house invokes the statutory penalty of double damages. Whether a given situation comes within the purview of the questioned statute therefore becomes one of fact.

Since the question of the application of this act comes to us on a demurrer, we have concluded that the cause should be sent back for a complete development of all pertinent facts relative to the application of the statute in question.

For the above purpose, the cause is reversed.