ARMSTRONG v. LLOYD.

5-2560 352 S. W. 2d 84

Opinion delivered November 27, 1961.

[Rehearing denied January 8, 1962.]

*Bernard Whetstone*, for appellant.

*Mahony & Yocum*, for appellee.

JIM JOHNSON, Associate Justice. This case is before us for the second time. On the first appeal, *Armstrong* v. *Lloyd*, 230 Ark. 226, 321 S. W. 2d 380, we reversed the trial court for having sustained a demurrer to appel-

lants' complaint. After that reversal, the case was tried to a jury resulting in a verdict for the defendant.

Appellant prosecutes the present appeal contending that the trial court erred in: 1. Refusing to excuse the juror Alpuente for cause; and 2. In refusing to require defense counsel to disclose the name of any liability insurance company which had issued any indemnity policy to the defendants.

The record reveals that the juror Alpuente stated that he was acquainted with some of the defendants and members of their families. He further stated that he had previously done business with one of the defendants and that in view of these circumstances he would find it embarrassing to return a verdict against the defendants. This statement was subsequently modified by the talesman when he stated that he could disregard his previous association in dealings with the defendant and try the case wholly and solely upon the evidence adduced from the witness stand and the law as charged by the court and render a fair and impartial verdict. In this state of the record, the trial court in the exercise of its sound discretion held the juror to be qualified. The trial court had an opportunity not given to us, *i. e.,* to see and hear the talesman, to observe his manner and demeanor and thereby was enabled to form a much more intelligent opinion about the impartiality of the juror than we can form by relying upon the cold printed page. While acknowledging it to be the better practice to excuse all talesmen who give any hint or intimation that they ever entertained any preconceived feelings or opinion which would cause them to lean one way or the other, we cannot say in the instant case that the trial court abused its discretion. Hence, appellants' first point must be rejected.

Point number 2 has given us most serious concern. It is a question which has never been presented to this Court. There are many cases deciding questions which were closely akin to the one in the case at bar but none of such cases may be said to be a precedent on the precise

question here. It has long been the rule that plaintiff's counsel is entitled to certain information with reference to the connections of prospective jurors with liability carriers who would bear the ultimate brunt of any verdict adverse to the defendants. However, in the enunciation of this rule, this Court has steadfastly stated that unless the matter of insurance coverage was relevant to some issue in the case on trial, it should not be gratuitously injected for the purpose of unnecessarily advising the jury of the fact of such coverage thereby possibly prejudicing them in their determination of the case. In the application of the foregoing rules, we have said that the connection of the talesman with particular carriers should be developed by general questions not calculated to advise the jurors that any particular company had issued coverage in the case on trial. *Delong* v. *Green,* 229 Ark. 100, 313 S. W. 2d 370. In the *Delong* case, *supra,* it was plainly implied that counsel might require a prospective juror to answer as to the names of any and all liability carriers with which he might be connected. It is immediately obvious that such an inquiry would be futile if plaintiff's counsel did not know the name of the carrier involved for it would make no difference what information he might receive from the prospective juror unless he could weigh such information in the light of known facts as to the identify of the carrier involved. Therefore, it would seem that it is proper for the trial judge, out of the hearing of the jury, to order defense counsel to identify by name any liability or casualty carrier having any ultimate responsibility in connection with the case. The only alternative to this rule would be to allow plaintiff's counsel to inquire of any talesman who answered that he was connected with liability carriers as to whether or not such talesman represented a company who wrote the liability coverage in the case on trial. Of course, such an inquiry would immediately advise the jury that there was liability coverage in the case. It would seem more consonant with our previous holdings to require defense counsel to give this information out of the hearing of the jury than to nullify the

salutary safeguards presently surrounding insurance carriers in these cases by allowing direct questions which necessarily and by their very terms advise of the existence of liability coverage.

While this question is new to this jurisdiction, it has been before the court of our sister State of Missouri on at least two previous occasions in the cases of: *Hill* v. *Jackson,* Mo. App., 272 S. W. 105; *White* v. *Teague,* 353 Mo. 247, 182 S. W. 2d 288. The holding of these cases has been summarized in 21 Ins. Law and Practice, Appleman, § 12815, P. 499, wherein it is said:

"Missouri has stated in this connection that it is the defendant's duty to state the true facts to the court, so that such interrogation can be made. Thus the court may require the defendant's attorneys, *out of the presence of the jury,* to give the name of the liability insuror, and permit the plaintiff's attorneys to ask the jurors concerning their connection with such company." (Emphasis supplied.)

While our case of *Delong* v. *Green, supra,* would preclude an interrogation of the talesman as to their connection with a particular company, as previously observed herein, the same result could be obtained by compelling the disclosure of the name of the carrier out of the presence of the jury and then allowing counsel to require the talesman to give the names of all carriers with whom they might be connected. With this information, counsel could then intelligently exercise the challenges to which the plaintiff is entitled under the law. Without all of this information, it would be impossible to make an intelligent determination as to the exercise of these challenges. It should be borne in mind that the right of the plaintiff to information enabling an intelligent exercise of challenge is equal to and on the same plane with the right of the defendant to prevent a gratuitous injection of the issue of insurance. The rule hereinabove announced seems to us to protect and preserve the rights of plaintiff and defendant alike. It is no answer to the question to say that an attorney should not be

compelled to disclose the name of his insurance-carrier client on the ground of attorney-client privilege. This is made abundantly clear by the following statement from 58 Am. Jur., Witnesses § 507, P. 285:

"The rule making communications between attorney and client privileged from disclosure does not ordinarily apply where the inquiry is confined to the fact of the attorney's employment, *the name of the person employing him, and the terms of the employment. The privilege presupposes the relationship of client and attorney and therefore does not attach to its creation."* (Emphasis supplied.)

For the reasons stated, the case must be reversed and the cause remanded for a new trial.