WILBURN W. MILLER v. HERSCHEL GOODWIN AND DOROTHY BEEVERS, ADMINISTRATRIX

5-4825                                         439 S.W. 2d 308

Opinion Delivered April 7, 1969
[Rehearing denied May 5, 1969.]

*Sharer, Tackett & Jones* by *Nicholas H. Patton* for appellant.

*Chambers & Chambers* and *McKay, Anderson & Crumpler* for appellees.

GEORGE ROSE SMITH, Justice.   This case has been in litigation for more than four and a half years, with four jury trials.   On July 17, 1964, a heavy truck, described as a derrick-type rig used in the oil fields, swerved suddenly off the Warnock Springs Road in Columbia County, overturned, and caught on fire.   The appellee Herschel Goodwin, who was driving the truck, was badly burned.   Goodwin's employer, Robert Beevers, who was riding with him, was even more severely burned and died less than ten hours later.

The original suit was for the wrongful death only. Beevers' administratrix, the plaintiff, charged Wilburn W. Miller, the defendant, with having caused the accident by driving a pickup truck down the center of the road and thereby forcing Goodwin to swerve to his right to avoid a head-on collision.   The first trial ended in a hung jury.   On the appeal from the second trial we reversed a judgment for the defendant because of an error in the instructions.   *Beevers* v. *Miller,* 242 Ark. 541, 414 S.W. 2d 603 (1967).   Goodwin then sued Miller

for personal injuries.    After a consolidation of the cases a third trial also ended in a hung jury.    At the fourth trial, now on review, the jury attributed 90% of the negligence to Miller and 10% to Goodwin.    Both plaintiffs recovered substantial damages.

The appellant urges three points for reversal. First, it is contended that the court allowed the plaintiffs' attorney to go too far in questioning a juror about his possible bias toward insurance companies.    In response to a question to the whole panel the juror Lindsey stated that he was an insurance agent representing companies writing automobile liability insurance.    The plaintiffs' challenge for cause was denied.    Counsel was then allowed to put the following two questions—or perhaps more accurately, the following question and restated question, as Lindsey did not answer the first inquiry:

MR. CRUMPLER:

Would the fact, Mr. Lindsey, that you sell liability insurance in any way prejudice you, or have you acquired a habit, that is, by aligning yourself with an insurance company, would you in any way side with the defendant just because you're usually on the defense side?

MR. TACKETT:

Now just a minute, Your Honor, we object and we ask for a mistrial.

THE COURT:

It will be overruled.

MR. TACKETT:

Save our exceptions.

MR. CRUMPLER:

In other words, Mr. Lindsey, in this particular case you feel like you can sit on this jury and give

the plaintiff free and clear consideration just as though you never had sold any liability insurance?

MR. TACKETT:

We object again, Your Honor, and ask for a mistrial.

THE COURT:

It will be overruled.   [Exceptions.]

It is contended that the questions had the effect of informing the panel that the defendant had liability insurance.   We do not agree with that view, for we find no reason to believe that the inquiries were not made in good faith for a permissible purpose.   In a similar situation, except that the trial court refused to allow any questions on the subject of insurance, we said in *Dedmon* v. *Thalheimer*, 226 Ark. 402, 290 S.W. 2d 16 (1956): "A person may have connections with  an insurance company that would cause him to be biased in favor of such companies ...   A lawyer trying a case would be rather careless if he failed to ascertain as well as possible if any one on the venire was biased or prejudiced on a question involved in the litigation, even though such question would be only indirectly involved."

Here counsel challenged Lindsey for cause when he revealed his connection with liability insurance companies.   That move failed.   It was then advisable for the attorney, before deciding whether to challenge Lindsey peremptorily, to try to find out if his insurance ties would cause him to favor the defensive side of the lawsuit.

Counsel also cite *Armstrong* v. *Lloyd*, 234 Ark. 233, 352 S.W. 2d 84 (1961), to support the argument that in any event the further interrogation of Mr. Lindsey

should have been conducted in chambers, outside the hearing of the rest of the panel. Perhaps that procedure would have been desirable, but the issue was not raised in the court below, for no such request for an in-chambers hearing was made. We find no merit in the appellant's first point.

Second, counsel for the appellant, without questioning the integrity either of the jury commissioners or of the jury itself, filed a motion to set aside the verdict on the ground that two of the jury commissioners had served in that same capacity within the preceding four years, contrary to Ark. Stat. Ann. § 39-202 (Repl. 1962). The trial court correctly denied the motion. The proof is not entirely clear, but even if it be assumed that the objection would have been valid if made to the panel as a whole, it came too late after the jury had been sworn and had returned its verdict. *Brown* v. *State,* 12 Ark. 623 (1852). The prior service of the jury commissioners was a matter of public record that could have been raised by a challenge to the panel. The appellant cannot be permitted to speculate upon the chance of a favorable verdict and then belatedly raise the point after the verdict proved to be in favor of his adversary.

Finally, it is insisted that the court should have excluded proof of a purported dying declaration by which Beevers told a nurse at the hospital that "a butane truck ran them off the road." The identification of the truck was important, because that was the most sharply disputed point of fact at the trial. Many witnesses saw Goodwin's rig soon after it left the road and caught on fire, but Goodwin was the only eyewitness who described the particular pickup truck that later proved, according to Goodwin, to have been driven by Miller. Miller admitted that he was driving a butane truck in the vicinity at about the time of the accident, but he positively denied that it was his truck that caused Goodwin to leave the road. Inasmuch as Goodwin's original statement describing Miller's truck contained an inaccuracy, Beev-

ers' dying declaration emerged as corroborating proof that may have tipped the scales in favor of the plaintiffs.

It is first argued that Beevers' declaration was inadmissible because he was not under a sense of impending death. We do not find that argument convincing. The accident happened soon after 7:00 a.m. Beevers' clothing was burned off, the burns covering 85 to 90 percent of his body. At the scene he made the statement: "I'm completely burned up." He also said: "The good Lord's let me live this long, and I appreciate it." There is no indication that Beevers' state of mind changed during the short interval between the accident and his statement to the nurse. Rather to the contrary, owing to his condition he asked at the hospital that his wife not be permitted to see him. Beevers was conscious until about noon and unquestionably knew that he had been very severely burned. He died at about five o'clock that same afternoon.

Under our practice the trial judge first determines whether a proffered dying declaration was made under such circumstances as to be competent evidence. If so, the judge admits it, as was done here. In reviewing his decision on the preliminary question of admissibility we treat it as an issue of fact, to be determined by the test of substantial evidence. *Fogg* v. *State,* 81 Ark. 417, 99 S.W. 537 (1907). In our opinion the testimony that we have mentioned is substantial proof that Beevers spoke under the requisite belief that his death was impending. At that point our review ends.

Counsel also insist that the statement, "A butane truck ran us off the road," is merely a conclusion and is therefore inadmissible. It is true, of course, that more details would have been elicited from a living witness testifying in the courtroom, but allowances must be made in the case of a declaration made by a person now dead. In fact, Dean Wigmore took the position that the

rule against opinion evidence (one aspect of which is the ban against conclusions) ought not to be applicable to dying declarations, because under the law it is necessarily true that the declarant cannot be called to narrate the facts in detail. Wigmore, Evidence, § 1447 (3d Ed. 1940). Wigmore conceded, however, that the majority view is against the admission of dying declarations that are merely statements of opinion, and that is the view that we have taken. *Rhea* v. *State,* 104 Ark. 162, 147 S.W. 463 (1912).

Even so, when as here the dying declaration is partly an assertion of an admissible fact and only partly a conclusion constituting the dying man's spontaneous statement of what happened, we are not inclined to apply the exclusionary rule quite as strictly as might be fair and just if the declarant were on the witness stand and available for further questioning. In this instance the most important part of Beevers' statement—his description of the offending vehicle as "a butane truck"—was *not* a conclusion. To the contrary, it was an unequivocal statement of fact. We are not willing to say that the jury should have been deprived of that vital information merely because Beevers coupled it with the assertion that the butane truck in question had "run us off the road." In a situation of this kind the trial court must exercise its sound judgment in ruling upon the admissibility of the declaration as a whole. Here we think the court rightly concluded that the desirability of admitting the vitally important factual part of Beevers' statement outweighed the slight possibility that the jury might have been unfairly influenced by Beevers' understandable failure to narrate all the facts that led him to say that he and his companion had been run off the road.

We have held that the trial court has some discretion in refusing to exclude a witness' answer which contains both competent and incompetent matter. *Arkadelphia Lbr. Co.* v. *Asman,* 85 Ark. 568, 107 S.W. 1171 (1907). Moreover, such a situation can be handled by an admonition to the jury, limiting the purpose for

which the testimony is admitted. The burden, however, is upon the objecting party to request such an admonition, a mere general objection being "wholly unavailing." *Wood* v. *Burris,* 241 Ark. 118, 406 S.W. 2d 381 (1966). Here no such request was made. Hence we are unable to say, considering the record as a whole, that the court erred in admitting the dying declaration.

Affirmed.

HARRIS, C.J., and JONES, J., think the dying declaration to be inadmissible.