JOHN HARRIS JONES *v.* COMMERCIAL PRINTING CO.

5-5407 463 S. W. 2d 92

Opinion delivered February 1, 1971

[Rehearing denied March 8, 1971.]

*John Harris Jones,* pro se.

*Coleman, Gantt, Ramsay & Cox,* for appellee.

FRANK HOLT, Justice. This appeal results from a jury verdict and judgment favorable to appellee, publishing company of the Pine Bluff Commercial, which was defendant below in a libel action based upon certain newspaper articles alleged to be false, malicious, and, in effect, calculated to destroy appellant's professional reputation.

Appellant, a practicing attorney in Pine Bluff, was instrumental in the organization of the Pine Bluff National Bank and owner of a substantial portion of its stock. Together with three other stockholders and organizers of the bank, appellant filed in chancery court a petition seeking an order to allow them to inspect the bank's financial records. In the court action which ensued, appellant was both a party petitioner and attorney for the petitioners.

Appellee, through its reporters and staff of the Pine Bluff Commercial, covered the proceedings and published articles on three successive days purporting to report the progress and outcome of the case. Appellant, however, interpreted the articles as an attack upon his integrity and instituted a libel action against appellee in which he alleged in his complaint that:

> * * * said articles were false and malicious and were not true or fair reports of such proceedings; defendant [appellee] knew said reports were false and maliciously intended to be understood by its readers that plaintiff [appellant] was unworthy and unqualified to practice his profession, imputing unprofessional conduct, corrupt and dishonest conduct, and guilty of such misconduct as a bank director that the Federal Regulatory Authority had demanded his resignation as a director, all of which was false and known by defendant [appellee] to be false, and was malicious and libelous per se.

The complaint further asserted that appellee's publications had a natural tendency to degrade appellant, to expose him to public ridicule and disgrace and to deprive him of that public confidence necessary to the successful practice of his profession. Appellant then enumerated in his complaint many incidents of alleged omissions, distortions and misstatements by appellee in its report of the chancery proceedings. The complaint continued:

> In purporting to report said judicial proceedings defendant [appellee] added comments and insinua-

tions of its own which were not a part of such proceedings * * * to degrade and destroy the reputation of plaintiff [appellant] * * * [and] published all testimony, arguments and rulings derogatory to plaintiff [appellant] but failed to publish the further testimony, arguments and rulings vindicating plaintiff [appellant].

Defendant's [appellee's] arbitrary selections from such judicial proceedings amounted to such a garbled report as to be libelous.

The complaint concluded by requesting compensatory damages of $500,000 and punitive damages of $100,000. As previously stated, a trial on the issues resulted in a judgment for appellee.

In one of his points for reversal, appellant contends that the trial court erred in refusing to give his tendered instructions B and either C or D, and that the court compounded its error by giving, over his objections, several of appellee's instructions. Appellant's tendered instruction B was fashioned, in substantial part, from Restatement of the Law of Torts, § 611, and comment d of that section; C and D were alternatively tendered instructions on punitive damages. The given instructions (appellee's) of which appellant complains are those imposing, as a prerequisite to his recovery, the requirement of proving that any defamatory statements were made with "actual malice."

The Restatement of the Law of Torts, § 611, from which appellant modeled his tendered instruction B, states in pertinent part:

The publication of a report of judicial proceedings * * * is privileged, although it contains matter which is false and defamatory, if it is

(a) accurate and complete or a fair abridgment of such proceedings, and

(b) not made solely for the purpose of causing harm to the person defamed.

We have had previous occasion to approve this section as the correct basis for an instruction. *Brandon* v. *Gazette Publishing Co.,* 234 Ark.. 332, 352 S. W. 2d 92 (1961). There the given instruction was approved as a correct declaration of the law.

We are most concerned with the given instructions (appellee's) which require a showing of actual malice. The long-established rule is that a report of judicial proceedings is privileged if it is complete, impartial and accurate. See *Door* v. *United States,* 195 U. S. 138 (1903); Prosser on Torts § 110, pp. 818—819 (3d ed. 1964); 50 Am. Jur. 2d, Libel and Slander, § 258 (1970). Appellee, however, argues that, as a result of the rationale and holdings in *New York Times* v. *Sullivan,* 376 U. S. 254 (1964) and *Time, Inc.* v. *McLaney,* 406 F. 2d 565 (5th Cir. 1969), the privilege remains despite any incompleteness, partiality or inaccuracies of the report unless actual malice is also demonstrated.

The *New York Times* case held that a public official is precluded by the constitutional guarantees of the First and Fourteenth Amendments of the United States Constitution from recovering damages for a defamatory falsehood relating to his official conduct un-- less he proves that the statement was made with actual malice—*i. e.,* with knowledge that it was false or with reckless disregard of whether it was false or not. This rule was later extended to "public figures" who are not public officials. *Curtis Publishing Co.* v. *Butts,* 388 U. S. 130 (1967). In *Time, Inc.* v. *McLaney, supra,* a lower federal court further extended the rule to encompass "individuals involved in matters of important public interest." Appellee contends that participants in judicial proceedings of more notable community interest should be included in this latter category. While we, of course, agree that trials are often of great public interest, we do not think that this is sufficient reason to engraft an "actual malice" requirement onto the constitutionally well-balanced rule presently applicable to

reports of judicial proceedings. There are other more cogent considerations which we deem controlling.

The lodestone of the *New York Times* decision and its progency was protection and encouragement of freedom of speech and press. The fear of a costly lawsuit for inaccurately, though honestly, reporting matters concerning public officials would certainly discourage the exercise of that degree of freedom which the Constitution guarantees to the press, especially in matters where even good faith investigative efforts cannot assure absolute accuracy. An added incentive behind this rationale is that public figures normally have access to the various mass media and can thereby readily correct or refute any defamatory misstatement made about them. Therefore, it is reasoned that a showing of actual malice as a prerequisite to recovery is, in such instances, a realistic and fair requirement.

This reasoning, however, has little significance relative to publications which purport to be reports of judicial proceedings. The major distinction in this regard between judicial proceedings and public figures (and perhaps other subjects of great public interest) is the former's peculiar susceptibility to exact reporting in every instance. An account of what transpired at trial is not contingent upon falliable or futile modes of investigation. Court records are available; and, insofar as reports of in-progress proceedings are concerned, the threat of a libel prosecution emanates only from incompetent reporting. Furthermore, those who partake in judicial proceedings enjoy an absolute immunity from suit for defamation (Prosser, *supra,* § 109, pp. 796 —797); if reports of those proceedings were to be afforded a more protective privilege than presently allowed, instances of defamation perpetrated by trial participants might well be significantly, yet unnecessarily, compounded before reaching the public. Since it is always possible for a report of a judicial proceeding to be complete, impartial and accurate, we decline to engraft the actual malice requirement onto our present rule, regardless of the notoriety of the subject matter or par-

ticipants involved in the judicial proceedings. We therefore must hold that the giving of instructions requiring proof of actual malice as a basis of recovery constituted prejudicial error.

Because of our disposition of this case, it becomes unnecessary to discuss the propriety of refusing appellant's tendered instructions on punitive damages except to say that upon retrial such an instruction should of course be given if warranted by the evidence.

In another of his points for reversal, appellant contends that the trial court erred in excluding from evidence a subsequent publication by appellee. We must agree. After appellant had instituted this libel action, appellee caused to be published, through its reporters and other staff members of the Pine Bluff Commercial, an article which stated in part:

> Jones' suit alleged that the articles did not report the trial fairly and completely and that they reflected unfavorably upon him.

> The Commercial Printing Company's answer to the suit states that the articles were 'true and accurate accounts of the trial' and of the statements that counsel and witnesses made during the trial.

Appellant attempted to introduce this article as a republication of the original asserted libel in an attempt to demonstrate aggravation of damages. However, appellee's objection to its admissibility was sustained.

The complained of publication appears to be a complete, impartial and accurate report of the pretrial pleadings of the parties. Of course, appellant views it as a reaffirmation by appellee of its allegedly defamatory statements. If the jury finds that appellee's initial publications were libelous and not privileged, it might well also find that the subsequent report of the pleadings had another purpose which was to further impress its defamations upon the public mind. However, since ac-

tual malice—*i. e.,* knowledge of the falsehood or reckless disregard for the truth—is not required, the jury, even if it finds that the initial publications were unprivileged, could nevertheless find that the subsequent report was published in good faith as a fair account of the pleadings. Of course, the jury might also find that the initial publications were privileged, in which case the subsequent report has no significance. In any event, we think the appellee's subsequent report of the pleadings should be made available for the jury's consideration.

We turn now to appellant's last remaining point for reversal. During voir dire of the prospective jury, a venireman stated that he would be embarrassed to return a verdict against appellee since he had been friends for a number of years with two of the owners of the Pine Bluff Commercial. He added, however, that he would try the case on the law and the evidence and reach an impartial verdict. We take this opportunity to once again admonish that although the refusal to excuse such a venireman for cause may not necessarily constitute an abuse of discretion, nonetheless it is always the better practice to excuse him. *Armstrong* v. *Lloyd,* 234 Ark. 233, 352 S. W. 2d 84 (1961). But since in all probability this situation will not arise upon a retrial, we deem it unnecessary to further discuss this issue.

Reversed.