GLADYS MARY BARNARD, ADMINISTRATRIX OF THE
ESTATE OF ALVA LEROY BARNARD, DECEASED *v.*
]MAJOR HAROLD L. KEATHLEY, TERRY KEATHLEY,
WAYMON WILKINS AND ROGER CRUSE

5-5338                                                459 S. W. 2d 121

Opinion delivered November 2, 1970

*Williamson & Mattingly;* By: *Dan E. Bartell,* for appellant.

*Wright, Lindsey & Jennings,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellant questions the propriety of the circuit judge's refusal to admit her testimony as to certain statements of her decedent made prior to his death, as dying declarations. She brought the action as personal representative of her late husband, Alva Leroy Barnard. She alleged that his death in his lawyer's office on February 13, 1968, resulted from an assault by appellees on the day before. She offered the testimony of the coroner. It was to the effect that, believing the death to have been from unnatural causes, he caused an autopsy to be performed. This autopsy revealed no brain damage, no abrasions about the face and head of the deceased nor any indication that trauma caused or contributed to the death of appellant's decedent. While the preliminary autopsy report showed no anatomical cause of death, the final report showed that this death resulted from massive myocardial infarction —a heart attack. The death certificate introduced by appellant reflected the results of both autopsies.

When the trial court's ruling was made Gladys Mary Barnard had testified substantially as follows:

Her husband had been operating a taxi for almost two years; he had always enjoyed good health; he had never had any symptoms of heart trouble. Between 6:30 and 7:00 p.m. on February 12 he received a telephone call at their home in Jacksonville. She took it to be of a threatening nature and believed that he reported it to the Jacksonville Police. She left their home at 7:30 to go to a bingo party at St. Jude's Church, leaving her husband and her son Eddy and returned around 9:30. Mr. Barnard was driving into their driveway. She had never

seen him in such condition. He had blood on the side of his head and bruises on his face and was shaking and afraid. She had to help him in the house. Knowing that he would be unable to, drive his taxi that night, she told him to contact Lonnie Cater, his substitute driver. Barnard left and returned with Cater after almost an hour. He spent the rest of the night at home. He was up and down all night, complaining with his head. Neither of them got any sleep. She thought he was dying.

In an in camera hearing, Mrs. Barnard answered affirmatively an inquiry whether her husband stated, after she came home about 9:30 p.m., that he was going to die. In response to the question asking how many times he mentioned the fact that he thought he was going to die she answered "Several times." During the one-hour interval he was away, he had gone to the police station. Even though she suggested that he seeek medical help, he did not do so. The next morning he got up about 6:00 a.m., but said he did not want to eat. He returned to bed where he remained until 8:00 o'clock. About 8:30 he had a driver take him to his lawyer's office in order that he might detail the events of the previous evening to the lawyer. He did not seek medical attention at this time either. As he left home, he told his wife he was going down to the lawyer's office to see what could be done and hoped he would be back, but wasn't sure whether he would or not.

The court held this testimony inadmissible because it was not adequately shown that Barnard's expressions of fear of death were made under a consciousness of impending death without hope or expectation of recovery. We do not find error in the trial court's holding.

Appellant contends that she made a prima facie showing that her decedent had a consciousness of impending death, and that the trial court should have submitted the question to the jury. In our latest expression on this subject we said that the trial judge must determine whether a proffered dying declaration

was made under such circumstances as to be competent evidence before admitting it. *Miller* v. *Goodwin & Beevers*, (April 7, 1969), 439 S. W. 2d 308. We also said that we review the trial court's decision on admissibility by the test of substantial evidence. To say the least, we find substantial evidence to support the trial court's holding in this case.

In order for a statement to be admissible as a dying declaration it must satisfactorily appear from the declarant's express language or from inferences fairly drawn from his condition, any evident danger and other circumstances that his sense of impending death was so certain that he was without hope or expectation of recovery. *Rhea* v. *State*, 104 Ark. 162, 147 S. W. 463; *Sutton* v. *State*, 187 Ark. 870, 63 S. W. 2d 278; *Comer* v. *State*, 212 Ark. 66, 204 S. W. 2d 875. There must be an abandonment of hope of survival by the declarant and a definite expectation that life is a matter of but short duration. *Pinson* v. *State*, 210 Ark. 56, 194 S. W. 2d 190. In view of Barnard's greater concern for obtaining a substitute taxi driver and for reporting his alleged beating to the police than for obtaining medical attention as advised by his wife and his anxiousness to consult a lawyer rather than a physician on the day of his death, we cannot say that the trial court's holding that the requisite consciousness of impending death had not been shown was incorrect.

Appellant also argues that her testimony should have been admitted because the court later admitted the testimony of substitute taxi driver Lonnie Cater, including an alleged dying declaration of Barnard. Appellant says that her testimony as to Barnard's sense of impending death was stronger than that of Cater and that Cater's testimony supplemented that of Mrs. Barnard in that respect. The correctness of the court's holding the Cater testimony admissible is not before us, so a comparison of the relative weight of their respective testimony would serve no useful purpose. The sufficiency of Cater's testimony to supply any deficiencies in Mrs. Barnard's is a question which is not pre-

sented to us, because appellant has not pointed out to us any attempt to offer her testimony after Cater testified. We can only determine the correctness of action that a trial court took or declined to take upon proper request. When a court rules on the admissibility of evidence, we can only evaluate its ruling in the light of matters which have been brought to the court's attention at the time of the ruling. In passing we note that appellant made no offer of proof to show just what Barnard's declarations to her were. It could well be that Mrs. Barnard's testimony would have been only cumulative to that of Cater.

We have found no error in the court's action, so the judgment is affirmed.