HOMER LEE DUCKERY *v.* STATE OF ARKANSAS

5605                                    471 S.W. 2d 330

Opinion delivered September 20, 1971
[Rehearing denied October 25, 1971.]

*W. P. Switzer,* for appellant.

*Ray Thornton,* Attorney General; *Garner L. Taylor, Jr.,* Asst. Atty. Gen., for appellee.

LYLE BROWN, Justice. Appellant Homer Lee Duckery was convicted of voluntary manslaughter in connection with the death of Katie Thomas. One point is advanced for reversal, that being that it was error to admit a purported dying declaration.

Katie Thomas, sixty-six years of age, resided in Wilmot at the home of her daughter and son-in-law, Rita Duckery and John Duckery. John was a brother of the appellant. On a Saturday night in October 1970, appellant went to the Duckery home. About nine o'clock John and Rita Duckery left the home to go to Eudora to pick up an item at a drug store. When the husband and wife left home appellant and Katie Thomas were drinking alcoholic beverages. When the couple returned in about one hour they found Katie Thomas in a bedroom in her night clothes. The door to the bedroom had been knocked off its hinges. Katie was on the bed and suffering from considerable bruises about the head. During Saturday night and Sunday the daughter administered ice packs and rubbing alcohol to Katie. The injured woman declined to be taken to a doctor. Murl Dean, a sister of Katie Thomas, came to the Duckery home late Sunday afternoon. When Murl saw the condition of her sister, Murl asked to take Katie to Murl's home in Wilmot because Rita had to work the night shift at a nursing home. Katie spent the night with Murl. During the night Murl administered ice packs and rubbing alcohol. She returned her sister to Rita's home early the next morning.

On that same Monday morning Katie's condition suddenly worsened and Dr. McCormick was called. When he arrived Katie was in a coma and it appeared to the doctor that she had a stroke. Dr. McCormick did not examine the head for bruises but said he did notice a bruise on her right forehead. At the doctor's suggestion she was taken to a hospital where she died that

afternoon. Dr. McCormick, having Katie's history of hypertensive heart disease, attributed death to a severe stroke.

An autopsy was performed by Dr. Klam, a pathologist. He found bruises in the area of the forehead, another over the right eye with swelling. He found black and blue marks involving the side of the lip and the chin, and another on the left shoulder. He reflected the skull and found a great deal of blood in the temple muscle. The brain was wet and bloody and there was a blood clot of considerable size in the temple region. He concluded that the deceased suffered from a subdural hemorrhage associated with trauma. He said he found no evidence of the type of hemorrhage seen with hypertension.

Now as to the dying declaration. Witness Murl Dean testified about the declaration. When Katie went home with Murl on Sunday afternoon, Katie is said to have lain across the bed, whereupon the following colloquy occurred, according to Murl:

> . . . I say, "You are suffering." And she say, "Yes, my head and my eye." And I said "Well, Katie, I'm gonna do something for you. I just want you to tell me now what's happened to you." And she say, "Oh, you just don't know." And I said, "Well, you just tell me what's done happened." And she said, "I'm gonna tell you, Murl, I'm gonna die. I can't live. I'm gonna die." I said, "I'm not thinking about that, you just tell me what happened to your eye." She said, "Well, Murl, I went to my room last night, and I locked my door. And Homer Lee come there and knocked on the door and told me to open it." She said, "I wouldn't open that door. Then Homer Lee run against that door and knocked it out, and he come on in there." She didn't say raped, Mr. Wynne. She say, "He lay me down and then he beaten me, and you know that's awful." And I said yes. And she said, "And don't say nothing else to me. You just don't know." She said, "But I ain't

gonna live. I know I'm gonna die." Then I say, "Well, just let me take you to the doctor. She say, "Oh, no. You can't take me to the doctor. Rita's life is at stake." And that's all she would tell me.

Continuing, Murl testified that she suggested calling the doctor and the police. Katie is said to have refused both offers because she thought it might endanger her daughter's (Rita) life if Katie's encounter with appellant became publicly known.

"In order for a statement to be admissible as a dying declaration it must satisfactorily appear from the declarant's express language or from inferences fairly drawn from his condition; any evident danger and other circumstances that his sense of impending death was so certain that he was without hope or expectation or recovery." *Barnard* v. *Keathley*, 249 Ark. 346, 459 S. W. 2d 121 (1970). If from an examination of those factors it is determined that there was substantial evidence for the trial judge to submit the question to the jury then we affirm. *Barnard* v. *Keathley*, *supra*, and *Miller* v. *Goodwin and Beavers*, 246 Ark. 552, 439 S. W. 2d 308 (1969).

It cannot be disputed that impending death was in fact certain. That fact is evident from the testimony of the pathologist. Also, Dr. McCormick's conclusion on Monday morning before her death that afternoon, was that she would never come out of the coma in which he found her. The court also had substantial evidence that from the time Katie Thomas suffered the alleged beating until the time she went into a coma she constantly complained of pain about her head and eyes and was unable to sleep the night before her death. We think the recited circumstances, together with Murl Dean's testimony, constituted substantial evidence and that the court was justified in submitting the question to the jury.

Affirmed.

BYRD, J., dissents.