Gina L. WARD *v.* STATE of Arkansas

CA CR 82-96                                    642 S.W.2d 328

Court of Appeals of Arkansas
Opinion delivered November 17, 1982

*Paul K. Lancaster* and *Robert A. Parker,* for appellant.

*Steve Clark,* Atty. Gen., by: *Victra L. Fewell,* Asst. Atty. Gen., for appellee.

LAWSON CLONINGER, Judge. The appellant, Gina L. Ward, was charged jointly with her husband, Randy Ward, with first degree murder in the death of the couple's four-month old son, Todd Ward, who died from skull fractures and internal injuries. Appellant's motion for severance was granted. Appellant was convicted by a jury verdict of second degree murder and sentenced to five years in prison.

Appellant contends that the trial court erred in failing to grant her motion for a directed verdict of acquittal, and that there is no substantial evidence to support the jury's verdict. We hold that the action of the trial court was proper and the judgment is affirmed.

Ark. Stat. Ann. § 41-1503 (Repl. 1977), provides that a person commits murder in the second degree if . . . (b) he knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life; or (c) with the purpose of causing serious physical injury to another person, he causes the death of any person.

A directed verdict of acquittal is proper only when no fact issue exists, and the court will review the evidence on appeal in a light most favorable to the appellee and affirm if there is any substantial evidence to support the verdict. *Harris* v. *State,* 262 Ark. 680, 561 S.W.2d 69 (1978).

Appellant insists that all the evidence connecting her with Todd's death is circumstantial, and that is correct, because there were no eyewitnesses. For circumstantial evidence to be sufficient, it must exclude every other *reasonable* hypothesis consistent with innocence, but the question of whether it *does* exclude every other reasonable hypothesis is usually for the fact finder to determine. *Smith v. State,* 264 Ark. 874, 575 S.W.2d 677 (1979). Although the jury should be instructed, as was done in this case, that circumstantial evidence must be consistent with the guilt of the defendant and inconsistent with any other reasonable conclusion, that is not the standard by which we review the evidence. Our responsibility is to determine whether the verdict is supported by substantial evidence, which means whether the jury could have reached its conclusion without having to resort to speculation or conjecture. *Cassell v. State,* 273 Ark. 59, 616 S.W.2d 485 (1981).

An examination of the evidence reveals that Todd, the child, was left with appellant's mother for several hours on Saturday, September 19, 1981, and that appellant and her husband picked up the child at about 8:00 p.m. that evening. Appellant's mother testified that at that time Todd ate well and had no bruises or scratches on him, but had "just a tiny blue speck on his cheek." At 2:00 p.m. the next day, Sunday, appellant and her husband left the child with a babysitter, Mrs. Puckett, so that the parents could go shopping. Upon arriving at the babysitter's, appellant took the child directly to the nursery and told the Pucketts not to bother the child because he was sick. Mrs. Puckett testified that she glanced at Todd and saw that he had a black eye, bruises and a little dug-out place on the side of his nose. The babysitter and her husband found the child gasping for breath at 2:30 p.m. and discovered that he had bruises and scratches all over his face, forehead and head. Appellant and her husband took Todd to the home of appellant's mother, and from there the child was taken to the hospital where he died the following day.

Dr. William R. Collie saw Todd at 6:00 p.m. in the hospital emergency room. Dr. Collie testified that Todd had numerous bruises and scratches about the head and was in shock. At first, it was thought that a head injury was the

cause of the child's condition, but within two hours Todd's abdominal cavity began to swell tremendously. It was then discovered that the real source of Todd's problem was a ruptured intestine within the abdominal cavity. X-rays revealed that Todd also had a fractured skull. Dr. Collie testified that the ruptured intestine would require an impact of considerable force, that such an injury is very rare in a child of Todd's age, and that it could not have been caused by a fall; that the internal abdominal injury could have been caused by force from the front or the back, and probably occurred 24 to 36 hours before admission. Dr. Collie stated that the skull fracture could have been caused by a fall, but that it would be "extraordinary" for a four-month old to fall and fracture his skull in that manner because of the pliability of the skulls of infants. Dr. Collie testified that Todd could not have caused the injuries on his cheek and the side of his nose. Although Dr. Collie asked appellant for an explanation of the injuries when Todd was admitted to the hospital, appellant offered none.

Dr. Dennis Smith, a pathologist and medical examiner for the state, performed an autopsy on September 22, 1981. Dr. Smith testified that the cause of death was a "blunt trauma to the head and to the abdomen," and that he classified the death as a homicide, with the abdominal injury being the immediate cause of death. Dr. Smith estimated that the abdominal injury occurred within 24 hours of surgery. The record is not clear as to the time of surgery, but it was certainly no earlier than 8:00 p.m. on September 21.

In *Williams* v. *State*, 267 Ark. 527, 593 S.W.2d 8 (1979), appellant was convicted of committing first degree battery on her ten-month old daughter and assessed a ten-year prison sentence. On appeal, she alleged that there was a lack of evidence to support the jury's finding of guilt. Evidence showed that the child was suffering from severe injuries which included burns, fractured ribs, and various bruises and contusions on her body. The medical testimony was that the child had suffered from child abuse. Appellant denied abusing the child in any way and suggested that perhaps the child had fallen. The Arkansas Supreme Court held that

although the evidence was circumstantial there was sufficient evidence to support the jury's finding that appellant had abused her child. The court held that there was no longer a distinction between an accessory and a principal and that there was no doubt that appellant could not have been around the child without knowing of her injuries.

In *Limber* v. *State,* 264 Ark. 479, 572 S.W.2d 402 (1978) the father was found guilty of second degree murder and given a twenty-year prison sentence, and the mother was given a five-year sentence for manslaughter. Appellant, the mother, argued that there was no evidence submitted by the state which connected her to any of the incidents or accidents that could have caused the death of her nineteen-month old son. The court recognized that although the evidence was circumstantial, there was evidence to indicate that she had seen her husband slap the child and spank him with such force as to leave a bruise. She admitted that she had seen him use his foot on the child. She testified that she had observed several bruises and cut places on her child and that she had argued many times about her husband's disciplining the children. The court held that "her complicity, according to the evidence, was more than innocent bystander."

In the case now before this court Dr. Collie estimated that Todd had sustained the skull fractures between 6:00 a.m. and 6:00 p.m. Friday, and Dr. Smith testified that the abdominal injuries which were the immediate cause of death were sustained somewhere around 10:00 p.m. on Saturday or 24 hours prior to surgery. It is obvious that a four-month old child is not mobile, and it is uncontradicted that he was in the custody and care of his parents from 8:00 p.m. Saturday until 2:00 p.m. Sunday. We do not distinguish between an accessory and a principal, Ark. Stat. Ann. § 41-301 et seq. (Repl. 1977), and there is no doubt that appellant could not have been around the child without knowing of his injuries. *Williams* v. *State, supra.* The jury could properly infer that the parents were responsible for Todd's care and health during the period in which the injuries were sustained, and that the injuries were either inflicted by one or both of them or could be explained. The jury was at liberty to accept the testimony of appellant's

mother, to the effect that Todd had no visible bruises when she saw him at 8:00 p.m. Saturday, or they could disregard her testimony and conclude that the injuries to Todd's head occurred before that time.

In *Cassell* v. *State, supra,* the Arkansas Supreme Court noted that " . . . defense counsel have not in the course of an excellent brief ventured to formulate a theory of the crime by which Cassell might emerge as an innocent man . . . Nor have we been able to reconcile such a theory with the evidence." In the present case neither appellant nor her husband testified, but it was not unreasonable for the jury to find that appellant could not have been completely ignorant of any event which inflicted such violent blows to her son. The doctors' testimony established as conclusively as it is possible to do that the injuries were not self-inflicted or the result of a fall or other accident, and the only logical inference is that one or both of the parents inflicted the blows.

When appellant was asked for an explanation of the injuries at the hospital she offered none, and later made a statement to a social worker that Todd scratched himself on the way to the hospital. It is significant that when appellant went to get Todd at the Pucketts' house on Sunday afternoon, appellant called her husband to observe how Todd jerked when she touched his abdomen. She did not mention Todd's tenderness about his abdomen at the hospital, and the doctors did not discover the internal injuries until two hours later when the child's abdomen swelled.

Instructions were given to the jury as to first degree murder, second degree murder, manslaughter and negligent homicide. It was proper to present the issues of fact to the jury and there is substantial evidence to support a conviction for second degree murder.

Affirmed.