Kathy Pearson BOONE *v.* STATE of Arkansas

CR 83-136                                    668 S.W.2d 17

Supreme Court of Arkansas
Opinion delivered April 30, 1984
[Rehearing denied June 4, 1984.*]

*PURTLE, J., would grant rehearing.

*Rick Burch;* and *Howard & Howard,* by: *William B. Howard,* for appellant.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for appellee.

RICHARD B. ADKISSON, Chief Justice. Following a trial by jury in Clay County Circuit Court, appellant, Kathy Pearson Boone, was convicted of second degree murder in connection with the death of her four year old son and was sentenced to twenty years imprisonment. On appeal we affirm.

Appellant first argues that there is insufficient evidence to support the conviction. The State's theory of the case was that the child died of repeated beatings administered by her boyfriend while appellant, having a legal duty to prevent them, stood by and did nothing.

On Thursday morning, August 6, 1981, the child died of peritonitis resulting from a blow to the abdomen which had ruptured his intestine. At the time of the child's death, appellant and the boy lived with appellant's mother who baby sat the child during the day. During the two weeks prior to the child's death, appellant would arrive home around 4:00 p.m., take the little boy with her to the house of her fiance, and return home later in the evening. On the Monday and Tuesday before the child's death, appellant did not take the child with her, but on the Wednesday before he died the child did accompany appellant to her fiance's house. Appellant's mother testified that from the time

appellant began dating her fiance, she noticed bruises on the child, discussed this with her daughter, and, when the bruises increased, "had arguments about it."

A co-worker of appellant testified that appellant told her that appellant's fiance, Steve Boone, had whipped the child four or five times consecutively for wetting his pants. Another co-worker overheard a telephone conversation made by appellant in which appellant stated "Momma, I know Steven has whipped that child or that baby too hard; he said he wouldn't do it anymore." Another co-worker testified that appellant confided to her that once when the child was taking a bath "Steve came in there and jerked [the child] up and whipped him without any clothes on." She also testified that one day appellant told her that the child's grandmother said something about "if I don't quit finding bruises on Terry Wayne or something, I can get you all for child abuse." She stated that appellant asked her if they could do that and her answer was "yes, they can."

Appellant's mother further testified that on the day of the child's death, Thursday, August 6, 1981, the little boy had bruises on his legs and his bottom and multiple bruises on the side of his face and on his forehead. She also stated that on the Wednesday evening the little boy was running a fever and vomited all night. On Thursday morning, appellant and her mother took the child to the doctor's office where he was pronounced dead upon arrival. The nurse who received the child and attempted to revive him testified there were multiple bruises all over the child.

The Assistant State Medical Examiner who performed the autopsy on the child testified that, based on his findings, he made a diagnosis of "battered child syndrome" and established the cause of death to be a blow to the abdomen which caused a rupture of a part of the small intestine. He testified that the injury was consistent with the symptoms suffered by the child before his death. He further testified that the child's injury was consistent with an injury that could have occurred between twelve to twenty-four hours before death, i.e., on the Wednesday before the day he died. He testified that a fall from a swing set or a child falling on

top of the little boy would not be sufficient to cause such an injury. He testified that the bruises found on Terry were a part of his finding of "battered child syndrome," an accepted medical diagnosis. He stated that bruises would not just suddenly appear and that because the bruises appeared on soft tissue, not bony prominences, the bruises indicated "battered child syndrome." He further stated that even without the bruises he would have suspected child abuse because of the nature of the intestinal injury with no reasonable explanation to account for it.

Appellant was convicted pursuant to Ark. Stat. Ann. § 41-1503 (Repl. 1977) which reads in pertinent part: "Murder in the second degree (1) A person commits murder in the second degree if: . . . (b) he knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life." The evidence supports a conclusion that appellant stood by and repeatedly exposed her son to beatings which resulted in his death. Appellant had legal custody of the child and the duty to prevent such abuse. We find sufficient evidence to support the jury's finding that the child died from an injury resulting from a blow to the abdomen. There is no doubt that appellant could not have been around the child without knowledge of such abuse. *Williams* v. *State,* 267 Ark. 527, 593 S.W.2d 8 (1979).

Although the evidence connecting appellant and her boyfriend with the child's death is circumstantial, the question of whether the circumstantial evidence excludes every other reasonable hypothesis is for the fact finder to determine. *Smith* v. *State,* 264 Ark. 874, 575 S.W.2d 677 (1979). Our responsibility is to determine whether the verdict is supported by substantial evidence, which means whether the jury could have reached its conclusion without having to resort to speculation or conjecture. *Cassell* v. *State,* 273 Ark. 59, 616 S.W.2d 485 (1981). See also *Ward* v. *State,* 6 Ark. App. 349, 642 S.W.2d 328 (1982). On appeal the evidence will be viewed in the light most favorable to the appellee, and the jury verdict will be affirmed if there is sufficient evidence to support it. *Shields* v. *State,* 281 Ark. 420, 664 S.W.2d 866 (1984).

Appellant next argues that the trial court erred in its sua sponte order for a second change of venue from Craighead County to Clay County. On August 5, 1981, appellant was charged with second degree murder in Greene County Circuit Court. On September 17, 1982, appellant requested a change of venue because of widespread prejudicial publicity. On September 28, 1982, a hearing was had in Greene County Circuit Court and a change of venue was ordered to Craighead County. On February 22, 1983, the prosecuting attorney's office requested a trial date and trial was set for March 14, 1983. On March 3, 1983, upon a review and finding of no available facilities in Craighead County for the week of March 14, 1983, the Greene County Circuit Judge Gerald Brown ordered the venue changed from Craighead County to Clay County. All three counties are in the same judicial district.

Appellant contends that the trial court's order which changed venue from Craighead County to Clay County violated Article II, Section 10 of the Constitution of Arkansas which provides that "venue may be changed to any other county in the judicial district in which the indictment is found, upon the application of the accused . . ." Appellant also argues that the trial court's order for a second change of venue violated Article II, Section 8 of the Constitution of Arkansas because the trial court acted in the absence of appellant and her counsel thereby depriving her of due process of law. Appellant cites settled Arkansas law that after indictment for a felony, the defendant must be present at each substantive step in his case. *Bearden* v. *State,* 44 Ark. 331 (1884). At the beginning of trial on March 14, 1983, the trial court asked both parties if they were ready for trial. Counsel for appellant replied: "We are not aware this case has been transferred so we don't consent, but we are here." Appellant contends this statement constituted an objection. We do not agree. An objection, to be effective must be made at the first opportunity and must apprise the trial court of the specific ground upon which it is based. See *Earl* v. *State,* 272 Ark. 5, 612 S.W.2d 98 (1981). Here appellant failed to state the basis for his objection and failed to obtain a ruling from the trial court. *Wood* v. *State,* 276 Ark. 346, 635

S.W.2d 224 (1982); *Wicks* v. *State,* 270 Ark. 781, 606 S.W.2d 366 (1980).

The State cross-appeals pursuant to Ark. Stat. Ann. § 43-2720 and Ark. R. Crim. P. 36.10, a procedure which affords law officers to take opinion of the Supreme Court upon questions of importance to the correct and uniform administration of the law. *State* v. *Taylor,* 180 Ark. 588, 22 S.W.2d 34 (1929); *State* v. *Lee,* 277 Ark. 142, 639 S.W.2d 745 (1982). The State argues that a statement made by the victim shortly before his death that appellant's fiance, Steve Boone, had beaten him was improperly excluded by the trial court as evidence constituting a dying declaration. (Steve Boone was a co-defendant severed from the case and tried separately.) In order to qualify as a dying declaration the statement must be made by a witness (1) who was a competent witness ("Every person is competent to be a witness except as otherwise provided in these rules." Unif. Rules of Evid. 601) (2) who believed at the time of the statement that his death was imminent and (3) whose declaration referred to the cause of his death. Ark. Unif. R. of Evid. 804(b)(2). On June 29, 1982, at an evidentiary hearing prior to the trial of Steve Boone, the child's grandfather testified that on the morning of Thursday, August 6, 1981, he sat down next to the boy on the couch. The child vomited blood, then looked at his grandfather and said "Steve beat me last night." The grandfather testified he heard the child repeat the same words to his wife. The child's grandmother testified that about 30 minutes later the child's mother arrived to take him to the doctor. The little boy said to his mother, "Mama, am I going to die?" to which she replied "No, baby." The trial court suppressed this evidence, ruling that the child did not believe he was going to die because no one had told him he was going to die.

For a statement to be admissible as a dying declaration, it must be shown that the declarant was possessed of a sense of imminent, inevitable death. This fact need not be shown by the declarant's express words alone. It can be supplied by inferences fairly drawn from his condition. *Barnard, Adm'x* v. *Keathley,* 249 Ark. 346, 349, 459 S.W.2d 121 (1970). The fact that the child had vomited blood and the fact that he

asked his mother if he were going to die strongly suggests that the little boy sensed his impending death. Even more significant was the fact that he made his statement *before* his mother told him he was not going to die. We cannot say there is no substantial evidence to support a conclusion that the child believed he was about to die. In order to qualify as a dying declaration, the statement must refer to the cause of death. The little boy's statement to his grandfather which was made approximately one hour before his death and which declared "Steve beat me last night," clearly referred to the cause of death, a blow of sufficient force to rupture his intestine. Accordingly we conclude that the statement proffered as a dying declaration was erroneously suppressed.

Affirmed as to appellant; error declared as to cross-appellant.

HICKMAN, PURTLE and HOLLINGSWORTH, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. We have, in my judgment, at times distorted the rule requiring substantial evidence, or corroborative evidence of a accomplice's testimony beyond credibility. See *Cassell* v. *State*, 273 Ark. 59, 616 S.W.2d 485 (1981).

In this case a mother was convicted of the second degree murder of her child. The only substantial evidence of her guilt is that she had custody and control over the child during a period of time in which the child was undoubtedly severely abused. We are supposed to, if we can, block from our minds a statement the child made the day he died to one of his grandparents that "Steve beat me last night." That evidence was inadmissible and was not considered by the jury. A doctor testified that the child could be diagnosed as suffering from the "battered child syndrome." Where is there other evidence that this woman knowingly killed her child under circumstances manifesting extreme indifference to the value of human life or that she was an accomplice to such a crime?

I could support a conviction of negligent homicide, but not second degree murder. The state simply sought and

obtained a conviction for a higher degree of guilt than that supported by the evidence.

I would reverse and dismiss.

PURTLE, J., and HOLLINGSWORTH, J., join.