**UNITED STATES of America, Plaintiff–Appellee,**

v.

**ONE GATES LEARJET, SERIAL NO. 28004, etc., Defendants,**

**Javier Cordero–Staufert and Proveedora de Servicios, S.A., Defendants–Claimants–Appellants.**

**No. 87–6212.**

United States Court of Appeals, Fifth Circuit.

Dec. 19, 1988.

Mark K. Glasser, Houston, Tex., for defendants-claimants-appellants.

Gerald M. Birnberg, John O'Neill, Houston, Tex., for One Gates Learjet.

Mikal Frey, Asst. U.S. Atty., and Henry K. Oncken, U.S. Atty., Houston, Tex., for the U.S.

Before CLARK, Chief Judge, GARZA and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Proveedora de Servicios, S.A. and Javier Cordero–Staufert, the record and beneficial owners, respectively, of one Gates Learjet, appeal the judgment ordering forfeiture of the aircraft to the United States. Finding an insufficient showing of probable cause to believe that the Learjet was used or intended to be used to facilitate the transportation, sale, receipt, possession, or concealment of cocaine in violation of the law of the United States; that the aircraft was. the proceeds of the exchange of a controlled substance; or that the aircraft was a device that was used in, aided in, or facilitated the importation, bringing in, concealing, harboring, or transportation of an article introduced into the United States in violation of the law of the United States, we reverse.

### Background

On March 14, 1985, the subject Learjet landed in Brownsville, Texas to clear customs. The aircraft was bound from Mexico to Houston, Texas where it was to be shown to prospective buyers. An initial search by customs officers disclosed no contraband, however, a Drug Enforcement Agent, alerted that the aircraft had been mentioned in a "lookout"[1] issued by the El Paso Intelligence Center, conducted a second search. Although the second search was also fruitless, the DEA agent sought the assistance of a Customs Service detector-dog. A dog and handler were brought in from a nearby city. The record does not reflect evidence of the reliability of the dog or even the identity of its handler. Inclement weather prevented a reliable sniff-search of the outside of the plane, but the dog reportedly "alerted" in two parts of the plane's interior, the cargo area and the aisle.

A DEA chemist was then called in to do a vacuum search and analysis. The aircraft was vacuumed with special equipment and the gleanings were tested. The chemist reported finding a trace of cocaine in the vacuumed dust. The quantity of the cocaine trace was three-to-four milligrams, or 10–to–14/100,000 of one ounce and was so small as to be unusable as a drug. The trace was not visible to the naked eye, alone or aided by a powerful magnifying glass. It was visible only through the use of a microscope and was measurable only through sophisticated scientific procedures.

Based on this trace of cocaine and other information about the Learjet, the United States filed a complaint for forfeiture *in rem* under 21 U.S.C. §§ 881(a)(4), 881(a)(6), and 19 U.S.C. § 1595a. At trial, the government offered the testimony of the DEA chemist and two DEA agents. The chemist testified about the vacuuming and testing, one agent explained the circumstances of the seizure and searches of the aircraft, and the second agent presented the other information relied on by the government to establish probable cause.

The other information which, for the most part, was hearsay, indicated that the owners of the Learjet had contacts with reputed drug traffickers. For example, the beneficial owner reportedly purchased real estate and automobiles for Raphael Caro–

---

1. A lookout is an informational device used by the intelligence unit of the Drug Enforcement Administration to alert agents that a particular person or conveyance is suspected of drug trafficking.

Quintero, believed by the DEA to be a large-scale drug dealer. The agent also testified that he had reliable information that Cordero–Staufert had purchased the Learjet for Caro–Quintero's use.[2] The aircraft was certified by Mexican authorities as a public air taxi. Its log contained the names of more than 200 passengers who used the aircraft after its purchase by Cordero–Staufert. Although Caro–Quintero is not listed as a passenger, the DEA agent testified that he recognized as charterers of the aircraft one alias used by Caro–Quintero, and three other reputed drug dealers. At the time of trial both Cordero–Staufert and Caro–Quintero were in Mexican prisons awaiting trial for violations of Mexican law.

Based on this evidence, the district court concluded that the government had shown probable cause to believe that the Learjet had violated 21 U.S.C. §§ 881(a)(4), 881(a)(6), and 19 U.S.C. § 1595a. The trial court found that the publicly certified aircraft was not a common carrier and ordered its forfeiture to the United States. This appeal followed.

*Analysis*

Appellants urge several assignments of error. We address only one, whether the evidence supports a finding of probable cause to believe that the Learjet had been used to violate the law of the United States. The government bears the burden of showing the probable cause relates to a violation sufficient to warrant forfeiture. *United States v. Monkey*, 725 F.2d 1007 (5th Cir.1984).

We have defined probable cause as "a reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir.1980). The government may sustain its burden through direct or circumstantial evidence. *United States v. $364,960.00 in U.S. Currency*, 661 F.2d 319 (5th Cir.1981). Probable cause in forfei-

ture cases "must be judged not with clinical detachment but with a common sense view to the realities of normal life." *United ed States v. Four Million, Two Hundred Fifty–Five Thousand Dollars*, 762 F.2d 895, 904 (11th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986) (citations omitted).

1. *Forfeiture under 21 U.S.C. § 881(a)(4).*

Under 21 U.S.C. § 881(a)(4), the government must prove probable cause to believe that the conveyance, in this case the Learjet, was used or intended to be used "to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2)...." Examining the cited paragraphs, we find that 21 U.S.C. § 881(a)(1) covers "[a]ll controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this title [Title II of Pub.L. No. 91–513, Oct. 27, 1970, 84 Stat. 1242, known as the 'Controlled Substances Act'];" and that 21 U.S.C. § 881(a)(2) covers "[a]ll raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this title."

The acts to which these paragraphs refer necessarily are limited to those within Congress' competence to proscribe, *i.e.*, those acts that take place within the United States, that threaten our security or directly interfere with our governmental operations, or that are intended to have an effect within the United States. *United States v. Columba–Colella*, 604 F.2d 356 (5th Cir. 1979); *see also American Banana Co. v. United Fruit Co.*, 213 U.S. 347, 357, 29 S.Ct. 511, 513, 53 L.Ed. 826, 832 (1909) ("[T]he general and almost universal rule is that the character of an act as lawful or unlawful must be determined wholly by the law of the country where the act is done."). Thus, to sustain the forfeiture under

---

**2.** There was also evidence that Cordero–Staufert purchased the Learjet several years before he met Caro–Quintero.

§ 881(a)(4), the government was required to show probable cause to believe that the Gates Learjet had been used or was intended to be used to transport or to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance or the products or equipment used in the production thereof, in violation of United States law, or had been used or intended to be used to import into, transport within, or export from the United States any controlled substance. The government failed to satisfy this evidentiary burden.

The government's evidence was in two parts. There was testimony, which, as above-noted, was largely hearsay, that Cordero–Staufert, a Mexican businessman, had recently acquired several substantial businesses, that these purchases were made as a "straw man" for Caro–Quintero, a reputed drug-trafficker, and that the Learjet was part of those purchases. The other part of the government's proof consisted of the chemist's testimony concerning the trace of cocaine found by the vacuuming procedure.

The district court determined that the trace of cocaine supported the conclusion that at some earlier time "the airplane was actively involved in the transportation of cocaine." There is no finding and the record contains no evidence that the cocaine referred to was actually transported into, within, or out of the United States. There is only the suggestion, which we accept *per arguendo* as proof, that there was illegal activity conducted outside of the jurisdiction of the United States, by foreign nationals, not intended to have an effect in the United States. That activity is beyond the reach of the laws of the United States. *See Columba–Colella,* 604 F.2d at 358.

█ The government argues that the trace of cocaine found in the vacuum gleanings proves that a violation of United States law occurred in that cocaine was transported into the United States. In support of this proposition, the government cites several decisions establishing the rubric that the amount of the contraband found on the conveyance is not controlling, including *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *United States v. One 1957 Oldsmobile Auto,* 256 F.2d 931 (5th Cir.1958); *United States v. One 1982 28' Int'l. Vessel,* 741 F.2d 1319 (11th Cir.1984); *United States v. One 1976 Porche,* 670 F.2d 810 (9th Cir.1979).

The very cases cited by the government reflect the fatal flaw in its argument. In each of the cited cases, and in others on point, the forfeiture of the conveyance was based on the totality of the circumstances, not just the quantity of the contraband. Small amounts of proscribed substances, taken with other evidence, have proven adequate for forfeiture, but in each case the amounts were recognizable and usable. *Associates Investment Company v. United States,* 220 F.2d 885 (5th Cir.1955) (two marihuana cigarettes in car, driver had seven others on his person); *United States v. One 1957 Oldsmobile Automobile,* 256 F.2d 931 (5th Cir.1958) (sufficient marihuana to make four-to-nine joints); *United States v. One 56–Foot Yacht Named the Tahuna,* 702 F.2d 1276 (9th Cir.1983) (six suspected marihuana seeds taken from yacht which independent evidence showed was used to transfer marihuana from sea-going vessel to San Francisco).

Several courts have considered small amounts of controlled substances and have found them insufficient to support a claimed violation of the narcotics laws. *See Edelin v. United States,* 227 A.2d 395, 398–99 (D.C.App.1967) ("If this substance cannot be sold, if it cannot be administered or dispensed, common sense dictates that it is not such a narcotic as contemplated by Congress to be a danger to society, the possession of which is proscribed."). *See also, Payne v. United States,* 294 A.2d 501 (D.C.App.1972); *Pelham v. State,* 164 Tex. Cr.R. 226, 298 S.W.2d 171 (1957); *Greer v. State,* 163 Tex.Cr.R. 377, 292 S.W.2d 122 (1956).

No case has been cited to us, and we find none, where the quantity of contraband was so minute as to be invisible to the naked eye, even the naked eye aided by a large magnifying glass. The chemist testi-

fied that the trace was so small that its presence could only be detected by complicated scientific procedures. The chemist conceded that the quantity could have been brought on board the aircraft on the shoe of a passenger or crew member and that the presence of the contraband could not have been detected other than by the procedures he used. The amount in question was too small to be possessed, used, exchanged, or enhanced. Indeed, the three-to-four milligram quantity of cocaine could be placed in the open palm of one's hand and demonstrated to even the most skilled investigator without detection. That amount, without more, will not support the showing of probable cause required for a § 881(a)(4) forfeiture. Nor is the other evidence presented by the government sufficient to show a violation of the law of the United States.

2. *Forfeiture under 21 U.S.C. § 881(a)(6).*

Section 881(a)(6) provides for the forfeiture of

> [a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this title, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this title, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

Under this section, to warrant forfeiture the government must show " 'probable cause for belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute;' *i.e.*, the exchange of a controlled substance." *United States v. $38,-600.00 in U.S. Currency*, 784 F.2d 694, 697 (5th Cir.1986) (quoting *United States v. $364,960.00 in U.S. Currency*, 661 F.2d 319, 323 (5th Cir.1981)).

The only evidence the government offered to establish probable cause under this paragraph were the assertions that Cordero–Staufert had acquired several businesses and certain pieces of real estate between 1975 and 1982 as a "straw man" for Caro–Quintero. Cordero–Staufert sought to prove that the acquisitions were legitimate, offering the testimony of a Mexican accountant which the trial court rejected. We do not address that evidentiary ruling but note the absence of evidence that illegitimate assets were used by Cordero–Staufert in the purchases. Further, the record is devoid of proof that Cordero–Staufert used illegitimate assets to purchase the Gates Learjet. Indeed, the government's witness denied having any source of information that indicated that Cordero–Staufert had purchased the Learjet with tainted funds. We find no probative evidence to base even a reasonable inference that there was a substantial connection between the acquisition of the Learjet and the trafficking of a controlled substance. We find no basis for forfeiture under 21 U.S.C. § 881(a)(6).

3. *Forfeiture under 19 U.S.C. § 1595a(a).*

Forfeiture of a conveyance used for the introduction of any article into the United States contrary to the law of the United States is provided for by 19 U.S.C. § 1595a(a):

> Except as specified in subsection (b) or (c) of section 594 of this Act [19 USC § 1594], every vessel, vehicle, animal, aircraft, or other thing used in, to aid in, or to facilitate, by obtaining information or in any other way, the importation, bringing in, unlading, landing, removal, concealing, harboring, or subsequent transportation of any article which is being or has been introduced, or attempted to be introduced, into the United States contrary to law, whether upon such vessel, vehicle, animal, aircraft, or other thing or otherwise, may be seized and forfeited together with its tackle, apparel, furniture, harness, or equipment.

Forfeiture under this provision requires a showing of probable cause to believe that the statute has been violated. That probable cause essentially mirrors the measure of proof required under 21 U.S.C. § 881(a)(4). *United States v. One 1979 Mercury Cougar XR-7,* 666 F.2d 228 (5th Cir.1982). As discussed above, there was no proof of the introduction of an article into the United States in violation of the law of the United States. We conclude that the amount of cocaine discovered by the chemist, 10-to-14/100,000 of an ounce, does not constitute an "article which is introduced into the United States contrary to law." There has been no violation of 19 U.S.C. § 1595a(a) warranting forfeiture.

Finding no showing of probable cause which will support forfeiture under either 21 U.S.C. §§ 881(a)(4), 881(a)(6), or 19 U.S. C. § 1595a(a), we REVERSE.