Dwayne HARBISON *v.* STATE of Arkansas

CR 89-236                                                      790 S.W.2d 146

Supreme Court of Arkansas
Opinion delivered May 21, 1990
[Rehearing denied June 18, 1990.*]

*Harry L. Ponder*, for appellant.

*Steve Clark*, Att'y Gen., by: *Paul L. Cherry*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Dwayne Harbison was convicted of being in possession of marijuana and cocaine. He was sentenced to six months in jail on the misdemeanor charge of possession of marijuana. On the cocaine possession charge, a felony, he was sentenced to three years imprisonment with two

---

*Hays and Glaze, JJ., would grant rehearing.

years suspended. He appeals only the cocaine conviction, contending that it was not the intent of the general assembly in criminalizing possession of a controlled substance to punish one found in possession of a bottle containing only cocaine dust or residue. We agree, thus the conviction is reversed and the case is dismissed.

In the record before us there is no testimony about the circumstances of Harbison's arrest. The record does contain a Hoxie police officer's affidavit, which apparently served as a basis for an arrest warrant in the case. That affidavit states that two officers stopped a car which had one headlight and one taillight out. They observed marijuana in the vehicle. They searched the vehicle and found marijuana and a brown glass bottle containing white powder.

A motion was made to dismiss the cocaine charge on the grounds that the amount in the brown bottle was insufficient to give rise to a charge of possession. Testimony of two experts from the state crime laboratory was taken. Apparently two defendants' cases were being considered jointly because it was stipulated between Harbison's lawyer and the prosecution that the testimony being taken would be used for both cases.

A drug chemist testified that he identified a substance found inside two plastic drinking straws as being a "trace amount" of cocaine "residue" too small to weigh with state crime laboratory equipment which could weigh nothing smaller than one milligram. From colloquy among the court and counsel, it is apparent that the two straws were unrelated to the case against Harbison but had to do with the other defendant.

The laboratory's chief toxicologist then testified that the amount found in the two straws was not sufficient to have any effect on the "human system" and a drug user would not attempt to use it because it "would not be an amount that someone would be interested in trying to use."

We have no similar testimony with respect to the brown bottle, but the prosecution stipulated that the expert testimony would have been the same with respect to the amount of cocaine found there. The record contains state's exhibit "3" which is a laboratory report concerning examination of six items. The report

lists Harbison as the suspect; otherwise, we have no information as to how the six items were obtained by the authorities except perhaps the brown bottle was the one found in the car stopped by the officers. Other than the brown bottle and 1.8 grams of marijuana, the list included a blue speckled tablet, three yellow tablets, a glass tube, and a mirror. On none of these latter items was any controlled substance detected.

The motion to dismiss was denied, and the case went to trial before the judge without a jury. The state introduced its exhibit "3" and the brown bottle. Conviction and sentencing followed.

## 1. Arkansas law

Harbison was convicted of violating Ark. Code Ann. § 5-64-401 (1987). The relevant operative part of that section appears in subsection (c): "It is unlawful for any person to possess a controlled substance. . . ." Harbison argues "all violations are based on weight of the controlled substance." While that is so with respect to subsections (a), (b), and (d) of the statute, subsection (c) says nothing about weight. The argument does not end there, however, but goes on to cite cases from other jurisdictions with statutes like ours where it has been held that possession of a trace or less than a useable amount of a controlled substance does not constitute an offense.

The state's brief dismisses the argument, contending we have already decided the issue. In *Berry* v. *State*, 263 Ark. 446, 565 S.W.2d 418 (1978), and *Denton* v. *State*, 290 Ark. 24, 716 S.W.2d 198 (1978), we reduced convictions of possession with intent to deliver to convictions of possession on the basis that the amounts of the controlled substances involved, a "trace amount of heroin" and a "powder residue" of amphetamine and methamphetamine, were insufficient to show intent to deliver. Nothing in either opinion indicated we had been presented with the question whether there was an amount sufficient to satisfy the possession requirement.

Also cited by the state is *Holloway* v. *State*, 293 Ark. 438, 738 S.W.2d 796 (1987), where we affirmed Holloway's conviction of possession of a controlled substance and referred to the drug paraphernalia and the "cocaine residue" found in his room. It was not, however, the "cocaine residue" which formed the basis

of his conviction. Rather it was the "bag filled with packets of . . . cocaine" found in the dining room of the home he shared with others. Our reference to the paraphernalia and residue had to do with circumstantial evidence that he was in constructive possession of the apparently large quantity found in the home.

The only other case cited in the state's brief is *Johnson* v. *State*, 23 Ark. App. 200, 745 S.W.2d 651 (1988). Johnson argued that the small amount of cocaine found in the packets he was selling to police officers did not constitute a useable amount, and thus the evidence was insufficient for proof of possession with intent to deliver. The court of appeals distinguished *Berry* v. *State*, *supra*, on the ground that there was plenty of evidence that Johnson had the intent to deliver, and in the *Berry* case it was held only that the amount involved was insufficient to show an intent to deliver. The court was not presented with the question we have here.

The state apparently did not perceive in this case that we are squarely, and for the first time, asked whether possession of a controlled substance must be of a measurable or usable amount to constitute a violation of § 5-64-401.

### 2. Cases from other jurisdictions

Counsel for Harbison argues that common sense, justice, and fairness dictate that the law should not punish a person found to be in possession of a container which only a scientist can determine to contain a controlled substance. Cases from other states are cited in support of the argument. Although there is an abundance of them, the state's brief did not cite any case on point. Some other jurisdictions, although in some instances only upon proof of additional facts, would punish such conduct. We must decide whether to follow that view or side with those jurisdictions which would require either a useable amount of the substance or an amount sufficient to permit the person in possession to know of its presence.

The early cases dealt with possession of alcoholic beverages during the prohibition period. In *Schraeder* v. *Sears*, 192 Iowa 604, 185 N.W. 110 (1921), the question was whether the defendant was in violation of an injunction against possession of liquor, having been found to possess a concoction called "Lash's

Bitters." The Iowa Supreme Court found the defendant to be purged of contempt because the bitters was a laxative and cathartic unsuitable for use as an alcoholic beverage, despite its alcohol content.

In *Henson v. State*, 25 Ala. App. 118, 141 So. 718 (1932), Henson was found in his room lying on a bed. A bottle on the floor contained a teaspoon of what the invading police identified as whisky. More whisky was found in a nearby field, but there was no evidence connecting it with Henson. He was convicted of possession, and the conviction was affirmed only because he made no "request for an affirmative charge or a motion for new trial." In *obiter dicta*, the court pointed out that possession requires some evidence of knowledge. It was stated that the prohibition laws are "upheld as police regulations affecting the morals, health, and well-being of the citizen," and for that reason they are not in violation of constitutional provisions. Then the court noted, "[i]t would therefore seem to be inconceivable that the Legislature intended the prohibition laws to apply to the possession of a teaspoonful of whisky when that quantity could not in any manner affect the morals, health, or well-being of any person or persons."

In *Isner v. United States*, 8 F.2d 487 (4th Cir. 1925), the defendant was indicted for being in possession of 70 gallons of grape wine described as "intoxicating liquor," and thus being in violation of the National Prohibition Act. The government conceded that the beverage was not "intoxicating" but contended that, because of its alcohol content, possession of it was nonetheless a violation of those parts of the act defining "liquor" by alcohol content. The court held that the Congress intended that such wine or vinegar be excepted from the act if not intoxicating.

The earliest notable case dealing with a drug other than alcohol on the question of possession of a minuscule amount is *Greer v. State*, 163 Tex. Cr. R. 337, 292 S.W.2d 122 (1956). Police found Greer in possession of a piece of wet cotton in a bottle cap. A chemist "extracted the contents of the bottle top with hot water and evaporated that to dryness and ran tests on the residue which indicated that the material extracted from the cotton was heroin." The court reversed the conviction in a very summary opinion, apparently issued upon rehearing, refusing to construe

the Uniform Narcotic Act as "authorizing a conviction for possessing a small piece of wet cotton containing a trace of a narcotic such as may have been wiped from a needle following an injection."

The *Greer* case was followed by *Pelham* v. *State*, 164 Tex. Cr. R. 226, 298 S.W.2d 171 (1957), in which there was a somewhat more elaborate opinion. Police had observed a car being driven by Pelham while occupants were shaking newspapers out the window and then discarding the newspapers. A "dust of some type" was flying from the newspapers. Scrapings of dust taken from Pelham's right front pants pocket and examined under a microscope revealed traces of marijuana. The chemist could not say there was as much as a grain found. The court described the amount as "infinitesimal." The court acknowledged that the legislature had not prescribed the amount necessary to be possessed in order to constitute the offense. It was held that "unless the amount of marijuana possessed is such as is capable of being applied to the use commonly made thereof, it does not constitute marijuana within the meaning of the statute." The court added: "It would be a harsh rule, indeed, that would charge the appellant with knowingly possessing that which it required a microscope to identify." The Texas Court of Criminal Appeals declined invitations to overrule the *Pelham* case in later cases involving marijuana, *Moore* v. *State*, 526 S.W.2d 226 (Tex. Cr. App. 1977), and cocaine, *Coleman* v. *State*, 545 S.W.2d 831 (Tex. Cr. App. 1977).

The California Supreme Court interpreted its possession statutes to require a "knowing" possession in the same sense that the accused must have knowledge of the presence of the object, although it is not necessary that he or she have knowledge of its "character." The court noted that the essence of "possession" is dominion and control, and those do not exist absent knowledge. *People* v. *Gory*, 28 Cal.2d 450, 170 P.2d 433 (1946). That decision was followed by the leading case of *People* v. *Leal*, 50 Cal. Rptr. 777, 413 P.2d 665 (1966), which reviewed the *Gory* case and other decisions of California courts of appeals, some of which were conflicting. In the *Leal* case, approximately one-half grain of heroin was found encrusted on a spoon in a bathroom medicine cabinet along with a wad of cotton, an eyedropper, and a hypodermic needle. The court, in an opinion by Justice Tobriner,

concluded that the California statute, which imposed penalties on "every person who possesses any narcotic other than marijuana" required an amount sufficient to permit a knowing possession. The court wrote, "[i]t is not scientific measurement and detection which is the ultimate test of the known possession of a narcotic, but rather the awareness of the defendant of the presence of the narcotic." The court noted that the presence of a residue or trace amount of a forbidden drug poses less danger of future harm and is less probative of the intent to use a narcotic in the future than the presence of drug paraphernalia which the legislature had made a misdemeanor. The intent of the legislature was to condemn "the commodity which could be used as such. It did not refer to *useless* traces or residue of such substance [emphasis in original]."

Without going into the question of whether the amount of controlled substance found was sufficient to permit knowledge of its presence the Arizona Supreme Court, in the other leading case, held that, to constitute the offense of possession, a "useable" amount must be found. *State* v. *Moreno*, 92 Ariz. 116, 374 P. 2d 872 (1962). The Arizona statute, like the one in California, prohibited possession of "any narcotic drug" with exceptions not relevant to the case. The court held that "in those cases where the amount is incapable of being put to any effective use" the evidence is insufficient to support a conviction.

Following primarily the *Moreno* case, the District of Columbia Court of Appeals reached a similar decision in *Edelin* v. *United States*, 227 A.2d 395 (D.C. 1967), where microscopic traces of heroin were found on drug paraphernalia in the possession of the accused. It was argued that possession of an unusable amount of a prohibited drug was not what Congress meant to criminalize because it can neither be used nor sold. The court agreed stating, "[i]f this substance cannot be sold, if it cannot be administered or dispensed, common sense dictates that it is not such a narcotic as contemplated by Congress to be a danger to society, the possession of which is proscribed."

The *Moreno* and *Edelin* cases have been followed recently by another case in the District of Columbia Court of Appeals, *Singley* v. *United States*, 533 A.2d 245 (D.C. 1987), and in the United States Court of Appeals for the Fifth Circuit, *United*

*States* v. *One Gates Learjet*, 861 F.2d 868 (5th Cir. 1988).

In *Note*, 77 *Col. L. Rev.* 596 (1977), it was reported that the states adopting the "useable amount" were in the minority of jurisdictions having considered the issue. However, the cases cited from the states in the majority were either those, unlike Arizona and California, adopting a blind adherence to statutory language requiring a finding of "any" amount of a drug or an "identifiable" amount. Our statute does not contain either of those words in its operative phrase. If it did, we would nonetheless examine the legislative intent. The other cases cited as being from states in the majority are ones, according to the author, which require more than an identifiable trace to permit an inference of knowledge in the absence of other circumstantial evidence, although they reject the "useable amount" rationale.

We have not held that possession must be "knowing" possession. During oral argument of this case, the state's lawyer, in response to a hypothetical question, argued that knowledge is irrelevant to possession. He contended that a case where a citizen is found to be in possession of a controlled substance under circumstances indicating lack of knowledge on his part would probably not be prosecuted because the prosecutor would exercise his discretion not to prosecute. We find that to be a totally unsatisfactory response if we are to have, to the extent possible, a government of laws.

The cases we have discussed all drive toward the same logical point, whether the rationale is that the amount of a controlled substance is either (1) sufficient to permit knowledge of its presence without the need for scientific identification or (2) sufficient to be useable in the manner in which such a substance is ordinarily used. The intent of the legislation prohibiting possession of a controlled substance is to prevent use of and trafficking in those substances. Possession of a trace amount or residue which cannot be used and which the accused may not even know is on his person or within his control contributes to neither evil.

We recognize the possibility that one may be in possession of an amount of a controlled substance sufficient to permit knowledge of its presence and yet still not be in possession of a useable amount. We agree, however, with the courts that have concluded that possession of less than a useable amount of a

controlled substance is not what legislators have in mind when they criminalize possession because it cannot contribute to future conduct at which the legislation is aimed, that is, use of or trafficking in drugs.

It is clear in this case that Harbison was found to be in possession of a bottle which had less than a useable amount of cocaine. As a practical matter, it was a bottle which had had cocaine in it, and that is not a crime.

Reversed and dismissed.

HAYS and GLAZE, JJ., dissenting.

STEELE HAYS, Justice, dissenting. The majority characterizes the case as one in which the defendant was found to be in possession of a bottle "which had had cocaine in it, and that is not a crime." But that assertion overtly understates the facts, against the myriad of cases holding that on appeal we give the facts their strongest probative force and consider them in the light most favorable to the appellee. *Boone* v. *State*, 282 Ark. 274, 668 S.W.2d 17 (1984). The fact is the appellant was in possession of a bottle which contained cocaine. A small amount of cocaine, to be sure — less than a milligram, and too small to be accurately measured by the instruments at the state crime lab, but nevertheless cocaine. Two chemists from the laboratory testified that they tested the contents of the bottle and found cocaine. Those are the undisputed facts to which this court is now asked to apply the law of Arkansas.

The majority goes to some length to arrive at the conclusion that unless the quantity of cocaine is in "a useable amount," there is no violation of the law. I respectfully disagree and submit that one need look no farther than the plain wording of our own Uniform Controlled Substance Act to refute the majority's position. Ark. Code Ann. § 5-64-401(c) (1987), states, "It is unlawful for any person to possess a controlled substance. . . ." Thus the act prohibits the possession of cocaine (a controlled substance), *irrespective of the amount*. That should end the matter, as we often say we must give effect to the language of the statute as we find it. *Carr* v. *Turner*, 238 Ark. 889, 385 S.W.2d 656 (1965).

By today's decision the majority effectively overrides the

plain intent of the legislature and holds that the possession of cocaine (and necessarily all other controlled substances) is legal, provided it is "less than a useable amount," whatever that may prove to be. I venture that determination will prove difficult to apply and will needlessly complicate the enforcement of the Uniform Controlled Substance Act, for how much marijuana is necessary to constitute "a useable amount?" Or how much crack, or heroin? I have no idea and I doubt seriously if the majority does, but those are issues we will now be asked to address. I believe a more dependable standard would be whether the amount is sufficient to permit identification of the substance, in which case its possession is unlawful.

GLAZE, J., joins in dissent.